[Cite as *Beachland Ents., Inc. v. Cleveland Bd. of Rev.*, 2013-Ohio-5585.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99770**

---

# BEACHLAND ENTERPRISES, INC., ET AL.

PLAINTIFFS-APPELLEES/
CROSS-APPELLANTS

vs.

# CITY OF CLEVELAND
# BOARD OF REVIEW, ET AL.

DEFENDANTS-APPELLANTS/
CROSS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-779321

**BEFORE:** Keough, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 19, 2013

**ATTORNEYS FOR APPELLANTS**

Barbara Langhenry
Director of Law
Lewis J. Dolezal
Asst. Director of Law
City of Cleveland
601 Lakeside Ave.
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

John W. Monroe
James A. Budzik
Mansour, Gavin, Gerlack & Manos
55 Public Square, Suite 2150
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} In June 2011, the city of Cleveland (the "city"), through its commissioner of the city's division of assessments and licenses, issued an assessment against Beachland Enterprises, Inc., d.b.a. Beachland Ballroom and Tavern, and its president, Cindy Barber (collectively "Beachland"), for their failure to remit admission taxes from the patrons of the Beachland Ballroom for the period July 2007 through January 2011.

{¶2} Beachland appealed the assessment pursuant to Cleveland Codified Ordinances ("CCO") 195.16 to the city's Board of Review, which affirmed the commissioner's assessment. Beachland then filed an administrative appeal of the Board's decision pursuant to R.C. Chapter 2506 in the common pleas court. The trial court affirmed the Board's decision in part, reversed in part, and remanded.

{¶3} The city appealed the trial court's judgment, and Beachland cross-appealed. We affirm in part, reverse in part, and remand.

I. Background

{¶4} Under CCO Chapter 195, the city levies an 8% tax on the amounts paid for admission to events within the city of Cleveland.[1] CCO 195.02. Event sponsors are required to collect the admissions tax, and report and remit it to the city on a monthly basis. CCO 195.04.

{¶5} Beachland is a music and concert club and, since 2000, has held events for

---

[1] CCO 195.02 was amended effective May 1, 2013 to provide that the admissions tax is 4% for any live entertainment venue that has an occupant capacity of 150 but not more than 750 people.

which it sold tickets and charged an admission fee. As the city's responsible tax administrator, the commissioner conducted an investigation regarding Beachland's compliance with CCO Chapter 195.

{¶6} In 2009, as part of the investigation, auditors from the city's division of assessment and licenses conducted field visits to the Beachland Ballroom and verified that Beachland collected an admissions fee for events held there. Subsequently, on July 6, 2010, the commissioner officially engaged Beachland for an audit of the monthly tax reporting period from July 2007 through January 2011. After being informed of the audit, Beachland untimely filed tax returns for the months July 2007 through October 2010, and timely filed a return for November 2010. Subsequently, Beachland untimely filed returns for December 2010 and January 2011. Cindy Barber signed all of the returns on the line requiring the "signature of responsible party." She listed her title as president of Beachland.

{¶7} Utilizing solely the tax returns submitted by Beachland, in May 2011, auditors for the city's division of assessments and licenses issued an examination report that contained findings of admissions tax deficiencies against Beachland. The commissioner adopted the report and issued an assessment in June 2011 against Beachland and Barber, jointly and severally, in the amount of $119,320.08 for unpaid tax liability, $41,601.69 in interest, and $244,016.85 in penalties.

{¶8} Beachland appealed the commissioner's assessment to the city's Board of Review under CCO 195.16. Prior to the hearing, Beachland requested that the Board

issue a subpoena duces tecum to the commissioner for the tax records of other businesses in the city. (Beachland wanted to argue selective enforcement by the city of its admission tax ordinances.) The Board advised Beachland that it did not have the authority to issue subpoenas. Subsequently, Beachland requested that the hearing before the Board be open to the public; the Board denied the request and ordered that the hearing would be confidential, as required by CCO 195.17.

{¶9} At the hearing, counsel for the city presented the commissioner's tax file, which included sworn affidavits from the auditors regarding their field visits to Beachland, the tax returns filed by Barber on behalf of Beachland, and correspondence between the city's division of assessment and licenses and Beachland dating back to 2000 in which the city advised Beachland of its duty to collect and remit the admissions tax and its tax delinquency, and Barber offered various explanations for Beachland's failure to file the required returns and remit the admissions tax. Counsel also presented a copy of the commissioner's tax assessment to Beachland, as well as copies of lawsuits filed by the city against other entities for their failure to collect and remit the admissions tax.

{¶10} Beachland did not present any witnesses or evidence at the hearing. It objected to the commissioner's assessment, however, on the grounds that (1) the Board's hearing was in violation of Ohio's Sunshine Law because it was not open to the public; (2) the assessment was not supported by reliable, substantial, and probative evidence because the city's entire case consisted of inadmissable hearsay; (3) Beachland was unable to establish its selective enforcement argument given the mandate in CCO 195.17

that all information obtained from tax returns, investigations, verifications, or hearings under CCO Chapter 195 remain confidential; (4) the assessment of interest and penalties on the tax liability was unreasonable and excessive; and (5) Barber was not personally liable for the taxes, interest, or penalties,

{¶11} The Board rejected Beachland's arguments and affirmed the commissioner's assessment. It found that (1) the hearing was properly not open to the public because hearings before quasi-judicial bodies are not "meetings" for purposes of Ohio's Sunshine Law, and under CCO 195.17, any information gained as a result of hearings conducted by the Board must remain confidential; (2) the Board could properly consider the evidence submitted by the commissioner because the hearsay rule does not apply to administrative hearings and, even if it did, the commissioner's ruling and investigatory file were admissible under Evid.R. 803; (3) Barber could be held personally liable for the tax assessment, including the penalties and interest; and (4) the amount of the assessment was reasonable and just.

{¶12} Beachland appealed the Board's decision to the common pleas court pursuant to R.C. Chapter 2506. The trial court decided the case on the basis of the record submitted by the Board and the parties' briefs. The trial court found that the Board was a quasi-judicial body and, therefore, outside the purview of Ohio's Sunshine Law. It further found that the rules of evidence do not apply to hearings before administrative bodies and, even if they did, the exception to the hearsay rule outlined in Evid.R. 803(8) would allow for admission of the commissioner's assessment and

investigative file. Accordingly, the trial court affirmed the Board with respect to its conclusions about public hearings and the applicability of the rules of evidence to its hearings.

{¶13} The trial court also affirmed the assessment of taxes against Beachland Ballroom. With respect to the assessment of interest and penalties, however, the trial court found that the issue was "not ripe" for its review because the Board and commissioner have discretion in "applying monthly penalty and interest assessment" but had not "fully vetted" this issue "in the administrative process." Accordingly, the trial court remanded the matter "for further hearing and clarification." Finally, the trial court held that Barber was not personally liable for the assessment and, therefore, reversed the assessment against her.

{¶14} The city appealed, and Beachland cross-appealed.

II. Analysis

A. Standard of Review

{¶15} Common pleas courts and appellate courts apply different standards of review to appeals brought pursuant to R.C. Chapter 2506. The common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. R.C. 2506.04.

{¶16} An appeal to the court of appeals is more limited in scope. We review on

questions of law and must affirm the common pleas court unless we find that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). "Whether the common pleas court abused its discretion is within the ambit of 'questions of law' in R.C. 2506.04 administrative appeals." *Global Country of World Peace v. Parma Planning Comm.*, 8th Dist. Cuyahoga No. 94534, 2010-Ohio-6023, ¶ 12, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 2000-Ohio-493, 735 N.E.2d 433.

B.      The City's Appeal

1.      Interest and Penalties

**{¶17}** Under CCO 195.16, "any person dissatisfied with any Administrative Ruling issued by the Commissioner of Assessment and Licenses * * * may appeal therefrom to the Board of Review within thirty (30) days from the issuance of such Ruling. The Board shall, upon hearing, have jurisdiction to affirm, reverse or modify any such Administrative ruling, or any part thereof."

**{¶18}** Dissatisfied with the commissioner's ruling that assessed taxes, interest, and penalties, Beachland filed a notice of appeal with the Board of Review. In its notice of appeal, Beachland specifically stated that it was appealing pursuant to CCO 195.16. Beachland made no reference in its notice of appeal to CCO 195.22, which provides that

> [u]pon recommendation of the Commissioner, the Board of Review may abate penalty, interest or both. Or, upon a written appeal by the taxpayer upon the refusal of the Commissioner to recommend abatement of penalty, interest, or both, the Board may nevertheless abate penalty or interest, or

both, for reasonable cause shown.

{¶19}   Although it did not reference CCO 195.22 in its notice of appeal, at the hearing before the Board, Beachland argued that the interest and penalties on its tax assessment were arbitrary and capricious, and it requested that the Board abate the penalties and interest under CCO 195.22.   Similarly, in its posthearing brief to the Board, Beachland argued that the interest and penalties were excessive and arbitrary, and asked the Board to exercise its authority under CCO 195.22 to abate the interest and penalties.

{¶20} In its written decision, the Board found that it was without jurisdiction to abate the interest and penalties due to Beachland's non-compliance with CCO Chapter 195.   The Board stated:

> In this appeal, the Commissioner is not recommending that this Board abate penalty, interest or both, and the Appellants have not appealed from the refusal of the Commissioner to recommend or to decline to recommend abatement of penalty, interest, or both.   In fact, the record does not reflect the Commissioner was ever asked by the Appellants to abate the penalty or interest.   In light of this fact, this Board is without authority under the code to abate the interest and penalties.

{¶21}   The trial court reversed the Board's decision on the issue of penalties and interest, however, because it found that Beachland had appealed from the commissioner's assessment "in its entirety," had raised the issue of interest and penalties at the hearing before the Board, and in its notice of appeal to the Board, had asserted that one of the bases for its appeal was that "any and all penalties calculated in the assessed amount is excessive, arbitrary, capricious and unreasonable."   The trial court remanded the issue to the Commissioner for further review and clarification.

**{¶22}** In its first assignment of error, the city argues that the trial court abused its discretion in reversing the Board's decision regarding interest and penalties and in remanding the issue for "further hearing and clarification." We agree, because Beachland did not properly invoke the equitable powers of the Board or the commissioner under CCO 195.22 for abatement.

**{¶23}** Contrary to the trial court's conclusion, the commissioner does not have "discretion in applying monthly penalty and interest assessment" when he finds unpaid tax. CCO 195.18 provides that interest on unpaid tax is charged at the rate of 1.5% per month from the date the unpaid taxes are due. CCO 195.19, regarding penalties on unpaid tax, states that "[i]n addition to interest as provided in Section 195.18, penalties are hereby imposed on all admissions tax remaining unpaid from the date that the tax became due until paid as follows." It then lists the mandatory penalties to be imposed for failure to pay admissions tax due, failure to file monthly tax returns or other reports required by CCO Chapter 195, and failure to remit admissions tax collected or required to be collected.

**{¶24}** Thus, as in this case, when the commissioner determines that monthly tax returns have not been timely filed and the admissions tax has not been remitted as required, he is required by ordinance to impose certain penalties and interest. However, under CCO 195.22, he has the authority to abate the interest, penalties, or both if the assessed party petitions the commissioner for an abatement and demonstrates "reasonable cause shown." But Beachland never asked the commissioner for an abatement. Instead,

it appealed the commissioner's assessment to the Board under CCO 195.16, which is a statutorily different proceeding than an abatement proceeding under CCO 195.22.

{¶25}   In a proceeding under CCO 195.16, a party challenges the legality of or the amount of the commissioner's tax assessment by appealing to the Board.   An abatement proceeding under CCO 195.22, however, is materially different from an appeal brought pursuant to CCO 195.16 in that the party concedes that the tax assessment is correct but asks the commissioner to invoke the equity powers authorized by CCO 195.22 and forgive the penalties and interest on that assessment.

{¶26}   As stated earlier, CCO 195.22 provides that:

[u]pon recommendation of the Commissioner, the Board of Review may abate penalty, interest or both.  Or, upon a written appeal by the taxpayer upon the refusal of the Commissioner to recommend abatement of penalty, interest, or both, the Board may nevertheless abate penalty or interest, or both, for reasonable cause shown.  The Rules and Regulations may authorize the Commissioner to abate penalty, interest, or both, for reasonable cause shown.

{¶27} Thus, under an abatement proceeding, a party must first petition the commissioner to abate the interest and penalties for reasonable cause and, if the commissioner refuses, the party may appeal such refusal to the Board of Review.   If the commissioner recommends abatement, the Board may affirm that recommendation.

{¶28}   In this case, as the Board correctly determined, Beachland did not appeal from the commissioner's refusal or recommendation to abate the interest and penalties because, in fact, Beachland never petitioned the commissioner under CCO 195.22 to do so.  Without such a petition, neither the commissioner nor the Board had discretion or

authority to abate the mandatory interest and penalties.

{¶29}   Beachland's argument that the Board should have considered the abatement issue at the CCO 195.16 appeal hearing because Beachland raised the issue in its pre- and posthearing briefs and at the hearing before the Board is without merit.   The Board has no independent power to review the assessment of interest and penalties unless the commissioner is first petitioned in writing under CCO 195.22 for an abatement and either refuses or recommends abatement.   Because Beachland never petitioned the commissioner for abatement, it does not matter that Beachland raised the issue before the Board.

{¶30}   The city's first assignment of error is sustained.   The Board properly found that it had no authority to consider the abatement of interest and penalties in Beachland's appeal brought pursuant to CCO 195.16.   Hence, the trial court abused its discretion in reversing the Board's decision on abatement of interest and penalties and remanding for further proceedings.

2.     Personal Liability of Cindy Barber

{¶31}   In its second assignment of error, the city argues that the trial court abused its discretion in reversing the Board's determination that Barber may be held personally liable for the taxes, interest, and penalties.   We agree.

{¶32}   In *Soltesiz v. Tracy*, 75 Ohio St.3d 477, 1996-Ohio-150, 664 N.E.2d 1273, the Supreme Court of Ohio recognized that a corporate employee may be held personally liable for the taxes, penalty, and interest where the statute clearly and unambiguously

imposes personal liability upon the employee for the consequences of failing to file the employer's tax report or withholding tax. The Supreme Court stated:

> [W]hen an employer-corporation fails to either (1) file a tax return or (2) remit the withheld taxes owed, it is liable for the taxes, the penalty and the interest accrued. [When the tax statute] is clear and unambiguous and imposes personal liability upon the responsible employee for the consequences of failing to file the employer's tax report or failing to remit the employee withholding tax * * * the responsible employee is personally liable for the taxes, the penalty, and the interest accrued.

*Id.* at 479.

{¶33} Although Beachland is correct that generally corporate officers are not personally liable for corporate liability, there are numerous examples of Ohio law that impose such personal liability in the withholding tax context. For example, R.C. 5747.07(G) imposes personal liability upon the employee responsible for the employer's fiscal responsibilities if that employee fails to file the report or pay the amount due regarding income tax required to be withheld from each employee's compensation. Likewise, R.C. 5739.33 imposes personal liability on employees having control or supervision of or charged with the responsibility of filing returns and making payments of Ohio sales tax. R.C. 5735.35(A)(1) similarly imposes personal liability on employees charged with the responsibility of filing reports and making payments regarding motor fuel tax, and R.C. 5743.57(A) imposes personal liability on those employees having control or supervision of or charged with the responsibility of filing returns or making payments regarding cigarette taxes.

{¶34} Here, the admissions tax imposed by CCO Chapter 195 is a withholding tax.

The tax is levied upon the person paying an admission fee, and not upon the person or business charging an admission, although such persons are charged with the responsibility of withholding the tax. *See* CCO 195.04(a) (stating that "[e]very person receiving any payment on which a tax is levied under this chapter shall collect the amount of the tax imposed by Section 195.02 from the person making the admission payment.")

{¶35} Persons responsible for the collection of the tax hold the tax in trust for the city and are required to report and remit such amounts monthly. CCO 195.04. As with other Ohio withholding taxes, CCO 195.99(o) clearly and unambiguously imposes personal liability upon the employee or officer responsible for the collection and remittance of the admissions tax for the failure to report and remit the tax:

> I]f any corporation, limited liability company, or business trust required to file returns and to remit tax due to the City under this chapter fails for any reason to make the filing or payment, any of its employees having control or supervision of or charged with the responsibility of filing returns and making payments, or any of its officers, members, managers, or trustees who are responsible for the execution of the corporation's, limited liability company's or business trust's fiscal responsibilities shall be personally liable for the failure.

{¶36} Because the statute clearly and unambiguously imposes personal liability, consistent with *Soltez*, 75 Ohio St.3d at 479, 1996-Ohio-150, 664 N.E.2d 1273, Barber can be held personally liable for the taxes, interest, and penalties assessed due to Beachland's failure to report and remit the admissions tax to the city.[2]

---

[2]Beachland's argument that Barber cannot be personally liable for the interest and penalties, even if she is liable for the tax, is without merit. In *Soltez*, the Ohio Supreme Court held that a statute that imposed personal liability for the "failure to file the report or pay the tax due" included personal liability for the tax, interest, and penalties because the consequence of failing to file the

**{¶37}** The trial court, however, found that the Board had improperly affirmed the commissioner's finding of personal liability by Barber because there was insufficient evidence that she was the responsible financial officer under CCO 195.99(o). Initially, we note that the party challenging the assessment has the burden of proof,[3] a burden Beachland failed to meet because it presented no evidence whatsoever at the hearing before the Board.

**{¶38}** Nevertheless, although we agree that Barber's signature on a February 2011 application for a certificate of registration for payment of future admission taxes is not sufficient to establish her personal liability for the 2007 to January 2011 time frame, our review of the record demonstrates that the commissioner presented overwhelming evidence to the Board that Barber was indeed the employee "having control or supervision of or charged with the responsibility of filing returns and making payments" and thus subject to personal liability. CCO 195.99(o).

**{¶39}** Barber signed and attested to each of the 43 returns filed with the commissioner as the "responsible party." Further, the commissioner's investigative file, which the commissioner submitted to the Board, contained correspondence between the

---

report or pay the tax included the imposition of penalties and interest. Like the statute construed in *Soltez*, CCO 195.99(o) imposes personal liability for the "failure" "for any reason to make the filing or payment." Because the consequence of failing to make the filing or payment includes interest and penalties, Barber can be held personally liable for the tax, interest, and penalties.

[3] *See, e.g., Global Knowledge Training, LLC v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d, ¶ 12 ("[W]hen an assessment is contested, the taxpayer has the burden to show in what manner and to what extent the commissioner's investigation and audit, and the findings and assessment based thereon, were faulty and incorrect.")

city and Beachland dating back to 2000. These emails demonstrate that Barber met with representatives from the city's division of licenses and assessments to discuss Beachland's delinquent registration for payment of admissions taxes and its failure to timely file and pay taxes. They also demonstrate that she told the commissioner and his representative that she

would try to make the payments.

{¶40} Reading this correspondence in conjunction with Barber's signature as the "responsible party" on the 43 returns filed with the commissioner unequivocally demonstrates that Barber was indeed the employee responsible for filing returns and making payments on behalf of Beachland. Accordingly, the commissioner was within his authority to assess the amount due and owing against Barber personally and therefore, the trial court abused its discretion in reversing the Board's decision that affirmed the commissioner's assessment of personal liability.

{¶41} The city's second assignment of error is sustained.

C. Beachland's Cross-Appeal

1. Public Meeting or Confidential Hearing

{¶42} In its first assignment of error on cross-appeal, Beachland contends that the trial court abused its discretion in determining that the hearing before the Board of Review was not a public meeting under R.C. 121.22. We disagree.

{¶43} Ohio's Sunshine Law, codified at R.C. 121.22, requires "public officials to take official action and to conduct all deliberations upon official business only in open

meetings unless the subject matter is specifically excepted by law." The intent of the Sunshine Law is to prevent public bodies from discussing public business outside the hearing of the public. *See generally*, *Holeski v. Lawrence*, 85 Ohio App.3d 824, 621 N.E.2d 802 (11th Dist.1993).

{¶44} As the Ohio Supreme Court has made clear, a quasi-judicial hearing is not a meeting for purposes of R.C. 121.22 and thus not subject to the open meeting requirements. *Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082, ¶ 25. That is, "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 62, 1998-Ohio-445, 689 N.E.2d 32.

{¶45} An administrative agency conducts a quasi-judicial proceeding when it settles "a justiciable dispute requiring evaluation and resolution. Implicit in this concept is the exercise of discretion." *Id.* The test for determining whether the act by an administrative agency is quasi-judicial is whether the function involves the exercise of discretion and requires notice and hearing, all elements being required to constitute a quasi-judicial act. *Id*.

{¶46} Here, the Board acted as a quasi-judicial body by adjudicating the dispute between the commissioner and Beachland. The parties received notice and a hearing at which they were given the opportunity to present evidence, and the Board, exercising its discretion, evaluated the evidence and decided the dispute. It could not be clearer that the hearing before the Board was a quasi-judicial proceeding not subject to the

requirements of R.C. 121.22.

{¶47} Beachland contends that the hearing was not quasi-judicial, however, because the Board has no authority to subpoena witnesses. But the fact that the Board, or any other administrative agency, is not vested with the full complement of judicial authority, including subpoena power, does not demonstrate the proceedings are not quasi-judicial. *See, e.g., M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150, 290 N.E.2d 562 (1972) (proceedings of administrative officers and agencies are quasi-judicial where there is a requirement of notice, hearing, and the opportunity to introduce evidence through witnesses; no requirement of subpoena power).

{¶48} Furthermore, Beachland's assertion that the Board "specifically prohibited [it] from calling witnesses to testify" is incorrect. Although the Board was without power to subpoena witnesses on behalf of Beachland, the transcript of the hearing demonstrates that the Board offered Beachland the opportunity to present witnesses at the hearing but Beachland chose not to put forth any evidence. (Tr. 19.)

{¶49} Next, relying on *TBC*, 81 Ohio St.3d 58, 1998-Ohio-445, 689 N.E.2d 32, and *Ross*, 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082, Beachland contends that even if the Board can properly *deliberate* in private to reach its decision, the *hearing* before the Board should have been public. Neither case supports Beachland's argument.

{¶50} *TBC* involved an appeal of a property valuation to the Board of Tax Appeals ("BTA"). On appeal to the Ohio Supreme Court, the property owner argued that

Ohio's Sunshine and Public Records laws required the BTA to provide its examiner's report to the parties. The Ohio Supreme Court disagreed. It found that the BTA's procedure was a quasi-judicial proceeding and that "[a]lthough the BTA opens its hearings to the public under Ohio Adm. Code 5717-1-15(D), it, like all judicial bodies, requires privacy to deliberate, *i.e.*, to evaluate and resolve, the disputes." *Id.* at 62. The Supreme Court noted that BTA board members and staff need privacy for candid discussion of the legal issues and facts and, accordingly, held that "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *Id.* Likewise, the Ohio Supreme Court held that the examiner's report was not a public record subject to disclosure under the Public Records Law.

**{¶51}** *TBC* does not support Beachland's argument that the Board's hearing in this case should have been public because the BTA proceedings were open to the public under Ohio Adm.Code 5717-1-5(D), not under R.C. 121.22. The Board of Review, however, is not subject to any analogous provision under state or local law that requires its hearings to be open to the public. To the contrary, CCO 191.2501, the ordinance establishing the Board, provides that any hearing held by the Board may be private. Additionally, under CCO 191.2309, any information gained during investigations or hearing by the Board is deemed confidential.

**{¶52}** Beachland's reliance on *Ross* is similarly misplaced. In *Ross*, a county board of elections held a hearing to decide challenges to Ross's voter registration. The hearing was open to the public but the board deliberated in private. On appeal to the

Ohio Supreme Court, the voter argued that the board had violated R.C. 121.22 by failing to vote in public to hold an executive session to deliberate and then by failing to vote in public on the challenges after its deliberations.

**{¶53}** The Ohio Supreme Court rejected this argument. It found that "even though a public body must open all its meetings to the public, there is a category of gatherings called 'hearings,' which do not have to be public." *Id.* at ¶ 24. It reiterated that quasi-judicial hearings are not meetings for purposes of R.C. 121.22 and held that "because a quasi-judicial proceeding like the one required for the challenges to Ross's right to vote * * * is not a meeting for purposes of R.C. 121.22, the Sunshine Law is inapplicable *from the outset*." (Emphasis added)*. Id.* at ¶ 30. Thus, *Ross* and *TBC* are clear that quasi-judicial hearings, such as the Board's hearing in this case, are not subject to R.C. 121.22.

**{¶54}** The trial court also held that the Board's hearing was not a public hearing because CCO 195.17 requires that any information gained as a result of returns, investigations, or hearings under CCO Chapter 195 remain confidential. Beachland argues that this was error because CCO 195.17 violates Section 28 of the city's charter, which states that "[a]ll meetings of the council or committees thereof shall be public and any citizen shall have access to the minutes and records thereof at all reasonable times."

**{¶55}** Beachland's argument fails, however, because the Board is not city council nor a subordinate body of the council. It is an administrative body created under CCO 191.2501 for the express purpose of deciding administrative tax appeals. It has no

legislative function. Accordingly, Section 28 is not applicable to proceedings before the Board.

**{¶56}** Because the trial court properly held that the hearing before the Board was a quasi-judicial hearing not subject to R.C. 121.22, Beachland's first assignment of error is overruled.

2. Subpoena Power of the Board

**{¶57}** In its second assignment of error on cross-appeal, Beachland asserts that the trial court erroneously affirmed the Board's refusal to issue subpoenas yet hold a private hearing.[4] Beachland contends that it was prejudiced by the Board's lack of authority to issue subpoenas because it could not adequately present evidence and develop its case. Beachland's argument is without merit.

**{¶58}** Although the Board acts in a quasi-judicial manner, it does not have inherent judicial powers. *Green v. W. Reserve Psychiatric Habilitation Ctr.*, 3 Ohio App.3d 218, 220, 444 N.E.2d 442 (9th Dist.1981), citing *State ex rel. Clarke v. Cook*, 103 Ohio St. 465, 1345 N.E. 655 (1921). "Administrative powers are only implied when clearly necessary to effect an express power. Such implied power can be no greater than the express power and must be exercised subject to the same express power limitations." *Id.*

---

[4]The trial court made no such ruling and, in fact, there is no reference to the Board's lack of subpoena power in the trial court's journal entry. We presume that Beachland is arguing that the trial court erred in affirming the Board in part because the Board refused its request to issue subpoenas.

**{¶59}** The Board of Review is established under CCO 191.2501 with the discrete powers to hear tax appeals arising under CCO Chapter 191. Under CCO 195.16, it is also vested with jurisdiction to hear appeals arising under Chapter 195. In neither chapter is the Board vested with authority to issue or enforce the issuance of subpoenas. Accordingly, the Board did not have express or implied authority to issue subpoenas relating to the hearing.

**{¶60}** Furthermore, Beachland did not pursue its judicial remedy for the Board's inability to issue subpoenas in the common pleas court. Under R.C. 2506.03, at the hearing of an administrative appeal, the trial court may consider only the evidence presented in the transcript of the administrative hearing "unless it appears on the face of the transcript or by affidavit filed by the appellant" that one of the conditions set forth in R.C. 2506.03(A) exists and, in the interest of justice, additional evidence is required. Those conditions include that the appellant was not permitted to "cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions," "offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions," or

> the appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from, or the refusal, after request, of that officer or body to afford the appellant opportunity to use the power of subpoena when posssessed by the officer or body.

R.C. 2506.03(A). Under any of the circumstances outlined in R.C. 2506.03, "the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party." R.C. 2506.03(B).

{¶61} Beachland never filed an affidavit or moved the trial court for an opportunity to present additional evidence under R.C. 2506.03. Likewise, Beachland has never proffered the additional evidence it allegedly could not present as a result of the Board's lack of subpoena power or suggested what the evidence would have been if it had been permitted to introduce additional evidence. Nor does Beachland argue on appeal that the trial court should have held a hearing to take additional evidence because it was "apparent from the face of the transcript" that Beachland had been unable to present evidence to the Board due to the Board's lack of subpoena power. Accordingly, Beachland has waived any argument that it was prejudiced by the Board's lack of authority to issue subpoenas or that it should have been allowed to present additional evidence in the trial court. *See Smith v. Coventry Twp. Zoning Dept.*, 9th Dist. Summit No. 23871, 2008-Ohio-2532, ¶ 11 (May 28, 2008). Beachland's second assignment of error is therefore overruled.

3.      Hearsay Evidence

{¶62} In its third assignment of error, Beachland argues that the trial court abused its discretion in affirming the Board's decision in part because the decision was "based solely on hearsay evidence and unsworn testimony," and not supported by substantial, reliable, and probative evidence. We disagree.

{¶63} As stated by this court in *Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476, ¶ 27 (8th Dist.),

> [t]he Ohio Supreme Court has held that administrative agencies are not bound by the rules of evidence applied in court. *Simon v. Lake Geauga*

*Printing Co.*, 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982). Evidence that is admissible in administrative hearings is defined as follows: "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992). Furthermore, hearsay is admissible in administrative proceedings. *Simon*, 69 Ohio St.2d at 44.

**{¶64}** Thus, we reject Beachland's argument that the Board could not rely on hearsay evidence. It is a well-settled principle of administrative law that administrative agencies are not bound by the rules of evidence and that hearsay is admissible in administrative proceedings. *Shephard v. Ohio Dept. of Job & Family Serv.*, 166 Ohio App.3d 747, 2006-Ohio-2313, 853 N.E.2d 335, ¶ 22 (8th Dist.). Furthermore, Beachland's assertion that the evidence before the Board consisted of "only unsworn testimony" is simply wrong. The city submitted the sworn affidavits of the commissioner certifying a true and exact copy of the assessment document (which included correspondence between the city and Barber, the auditors' sworn field reports, and the tax returns filed by Barber) and attesting to the gross amount of admissions tax collected from Beachland from 2007-2010, and the sworn affidavit of auditor Mike Ryba certifying a true and exact copy of the tax returns filed by Beachland. And, even if the evidence rules applied, the trial court properly determined that the exceptions to the hearsay ruled outlined in Evid.R. 803 would allow for the Board's review of the documents.

**{¶65}** Finally, we reject Beachland's assertion that the trial court erred in affirming

the Board's decision in part because it was not supported by reliable, provative, and substantial evidence. We again note that Beachland fails to acknowledge that it had the burden of proof to demonstrate that the commissioner's findings and assessment were incorrect, but that it chose not to introduce any evidence on its behalf and, hence, failed to meet its burden. Nevertheless, the commissioner submitted reliable, probative, and substantial evidence to support the tax assessment. The exhibits were reliable because they were certified copies of the documents contained in the commissioner's tax file; they were probative because they detailed the findings and calculation of the assessment issue, thus proving the assessment was correct; and they were substantial because they formed the basis of the tax assessment and rebutted the arguments raised by Beachland at the hearing before the Board.

**{¶66}** Beachland's third assignment of error is therefore overruled.

D.    Conclusion

**{¶67}** The trial court's judgment is affirmed in part and reversed in part. We affirm that part of the trial court's judgment that affirmed the Board's decision that the Board's quasi-judicial proceeding is not subject to Ohio's Sunshine Law or the Rules of Evidence. We also affirm that part of the trial court's judgment that affirmed the assessment of tax against Beachland Ballroom. We reverse the part of the trial court's judgment that reversed the Board's imposition of penalties and interest against Beachland and Barber, and reverse the trial court's judgment finding that Barber is not personally liable for the tax, penalties, and interest. The matter is remanded for the trial court to

issue judgment affirming the Board's decision in its entirety.

{¶68} Affirmed in part; reversed in part; remanded.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
TIM McCORMACK, J., DISSENTS. (SEE ATTACHED DISSENTING OPINION).

TIM McCORMACK, J., DISSENTING:

{¶69} I respectfully dissent.

{¶70} "That the power to tax is the power to destroy; that the power to destroy may defeat and render useless the power to create." *McCulloch v. Maryland*, 17 U.S. 316, 4 L.Ed. 579 (1819).

{¶71} It is perplexing to attempt to understand how America's most economically distressed city, a city that has hemorrhaged most of its population and most of its commerce, finds itself locked in a death spiral with one of its few, innovative,

value-producing enterprises; one that actually invites large numbers of people into the city. While this court has not been called upon to directly answer this apparently unanswerable mystery, it is the question that ultimately dominates this prolonged legal dispute.

**{¶72}** We are required by this appeal to merely interpret provisions of a city tax code, not to attempt to make sense of how this conflict, with much larger consequences, came to our doorstep. We can only expect that based on the regional value of Beachland Ballroom, the parties jointly recognize the multi-dimensional value of this unique Cleveland taxpayer; that prudence in resolving this potentially destructive administrative action is adopted from this day forward.

**{¶73}** While dissenting, I agree in part with my colleagues, the majority, in their disposition of Beachland's cross- appeal. I would, though, fully affirm the trial court in reversing the Cleveland Board of Review's assertion and action that it is without authority, without power to affect the imposition of interest and penalties in the amount of $285,708.54 on Beachland. I would affirm the trial court in reversing the Board's imposition of personal liability as to Beachland's president.

**{¶74}** Pursuant to CCO 195.16, "any person dissatisfied with any Administrative Ruling issued by the Commissioner of Assessment and Licenses * * * may appeal therefrom to the Board of Review * * * from the issuance of such Ruling. The Board shall, upon hearing, have jurisdiction to affirm, reverse or modify any such Administrative ruling, *or any part thereof*." (Emphasis added.) This section and similar

provisions for appeal were written and adopted to ensure that governments at any level are precluded from ruling through neglect, error, or fiat.

**{¶75}** I agree with the trial court that despite the provisions of CCO 195.22, CCO 195.16 is worded sufficiently broadly to authorize the Board to review the Commissioner's refusal to abate the penalties or interest in this case, where Beachland appealed the Commissioner's decision "in its entirety." The taxpayer in this case faced a crushing, extraordinary amount of penalties and interest of $285,618.54 — almost three times more than the amount of claimed taxes owed of $119,320.08. Requiring a rigid hypertechnical compliance with CCO 195.22 produces a harsh result under the circumstances of this case. I agree with the trial court's prudent determination that the issue of penalties and interest has not been fully vetted in the administrative process. I would affirm the trial court's decision remanding this issue for further hearing and clarification so as to achieve an equitable result.

**{¶76}** I would also affirm the trial court's finding regarding Beachland's president's personal liability. The trial court reasoned that CCO Chapter 195 does not define "Fiscal Officer," nor does it provide that the Fiscal Officer is the responsible party. All of the documents Ms. Barber signed were in her capacity as the Corporation's "President." Furthermore, the Board found personal liability based on R.C. Chapter 5739 (Ohio Sales Tax). The trial court rejected the Board's reasoning because Ms. Barber was not assessed penalties or prosecuted under Section 5739. I agree.

**{¶77}** For these reasons, I would affirm the judgment of the trial court.