[Cite as *Rudd v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-3796.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| TIMOTHY RUDD | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2015-CA-9 |
| | : | |
| v. | : | T.C. NO. 14-326 |
| | : | |
| OHIO DEPARTMENT OF JOB | : | (Civil Appeal from |
| & FAMILY SERVICES | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___18th___ day of ____September____, 2015.

. . . . . . . . . .

BYRON K. BONAR, Atty. Reg. No. 0002602, Legal Aid of Western Ohio, Inc., 20 S. Limestone Street, Suite 220, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellant

JAMES H. LOCKWOOD, Atty. Reg. No. 0088434, Assistant Attorney General, Health and Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, P.J.

{¶ 1}  Timothy Alan Rudd appeals from a judgment of the Miami County Court of Common Pleas, which affirmed an administrative decision that terminated Rudd's home-delivered meals through Medicaid and the Department of Job and Family Services

(ODJFS) on the basis that it was duplicative of other services provided to him.

{¶ 2}  For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3}  Rudd, age 62, has been diagnosed with a variety of established medical conditions.   He receives Social Security Disability and various services from the ODJFS and Medicaid through the Ohio Home Care Waiver Program.   Under the program, he receives two two-hour visits from personal care aides each day, seven days per week, and one visit from a nurse each day.   Prior to a reassessment of services conducted in 2014, he also received two home-delivered meals each day from a company, Clossman Catering, that specializes in providing meals for people with medical conditions that are affected by their diets.

{¶ 4}  In March 2014, ODJFS completed an assessment of Rudd's services and determined that, because the personal care aides were present in Rudd's home during two meals per day and were doing some cooking for him, the home-delivered meal service was an impermissible duplication of services under Ohio Adm.Code 5160-46-04(D)(3)a.   The agency indicated its intention to discontinue the home-delivered meals.   Rudd appealed from the decision to discontinue this service, arguing that the meals were a medical necessity and were not duplicative because they were specially tailored to his medical needs.   Rudd did not dispute that the aides cooked for him, but he argued that the home-delivered meals should continue due to his diagnoses and dietary restrictions. The hearing officer found that Rudd's personal care aides were "present during meal time and were doing meal preparation"; the officer also noted that one of the aides reported that she "always makes extra food and puts it in the freezer" so that Rudd could eat it if he got hungry when an aide was not present, that

Rudd's "cupboards and freezer are full," and that she "supplements [Rudd's] HDMs with the food she prepares since the HDMs are not big enough." Based on this evidence, the hearing officer found that Rudd's home-delivered meals were a duplication of services that violated Ohio Adm.Code 5160-46-04(D)(3).

{¶ 5} Rudd filed an administrative appeal from the hearing officer's finding, and a hearing was held in April 2014. The Administrative Appeal Officer agreed with the hearing officer that Rudd's home-delivered meals were duplicative of the other services provided to him and therefore should be terminated. The Decision stated:

While there is no question that a proper diet is important to effectively manage [Rudd's medical condition], there is no evidence that the meals being provided are provided as [a] therapeutic diet that has been ordered by a licensed physician. Additionally, there is significant evidence that the appellant is not managing his diet appropriately even with the home delivered meals. * * * While the home delivered meals may provide some benefit to the appellant's management of his [condition], there is no indication that the appellant's home health aides cannot work with a dietician to provide appropriate meals for the appellant.

The Appeal Officer concluded that the home-delivered meals were "not cost effective and a duplication of services."

{¶ 6} Rudd appealed the administrative decision to the Miami County Court of Common Pleas pursuant to R.C. 5101.35(E) and R.C. 119.12. On February 25, 2015, based on its review of the record that was developed during the administrative proceedings, the trial court found that the administrative decision was supported by

reliable, probative, and substantial evidence and was in accordance with the law; it affirmed the administrative decision to terminate Rudd's home-delivered meals.

{¶ 7}  Rudd appeals from the trial court's judgment, raising three assignments of error.

> **The Common Pleas Court erred by abusing its discretion when it gave more weight to hearsay evidence than to Mr. Rudd's sworn testimony presented at the administrative hearing.**

> **The Common Pleas Court erred by committing an error of law when it failed to give any deference to the opinions of Mr. Rudd's treating physicians.**

> **The Common Pleas Court erred by abusing its discretion when it ignored that Mr. Rudd met the regulatory requirement for home delivered meals which was that home delivered meals be ordered by a physician.**

{¶ 8} Rudd asserts that the trial court improperly weighed the evidence presented at the administrative hearing, that it did not give appropriate deference to the opinions of his physicians, and that it abused its discretion in affirming the administrative decision.

{¶ 9}  "An appeal from an administrative appeal decision of the Director of the Job and Family Services Agency may be taken in the court of common pleas pursuant to R.C. 119.12."  *Gruber v. Ohio Dept. of Job & Family Serv.,* 153 Ohio App.3d 6, 2003-Ohio 2528, 790 N.E.2d 800, ¶ 12 (6th Dist.).  "Under R.C. 119.12, the court of common pleas must review an agency order to determine whether 'the order is supported by reliable, probative, and substantial evidence and is in accordance with law.' "  *Id.*  "An appellate

court, on the other hand, is limited to determining whether the common pleas court abused its discretion in reviewing the evidence in support of the administrative order." *Id.,* citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.,* 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992). (Other citation omitted). "Issues of law, however, are reviewed de novo." *Gruber* at ¶ 12, citing *Sohi v. Ohio State Dental Bd.,* 130 Ohio App.3d 414, 421, 720 N.E.2d 187 (1st Dist.1998). *See also Rodefer v. Colbert,* 2015-Ohio-1982, 35 N.E.3d 852, ¶ 14 (2d Dist.). Thus, when a court of appeals reviews a common pleas court's decision in an administrative appeal, its standard of review is far more circumscribed than that employed by the court of common pleas. *Farran v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 99851, 2014-Ohio-823, ¶ 2.

{¶ 10} Ohio Adm. Code 5160-46-04(D), the regulation related to home-delivered meals under the Ohio Home Care Waiver and Medicaid programs, states, in pertinent part:

(D)(1) "Home delivered meal service" is defined as the provision of meals to a consumer who has a need for a home delivered meal based on a deficit in an ADL [activities of daily living] or a deficit in an IADL [instrumental activities of daily living] identified during the assessment process. The service includes the preparation, packaging and delivery of a safe and nutritious meal(s) to a consumer at his or her home. A consumer may be authorized to receive up to two home delivered meals per day.

(2) Home delivered meals:

(a) Shall be furnished in accordance with menus that are approved in writing by a licensed dietitian who is currently registered with the commission on

dietetic registration.

(b) Shall take into consideration the consumer's medical restrictions, religious, cultural and ethnic background and dietary preferences.

(c) Shall be prepared by a provider who is in compliance with Chapters 918., 3715. and 3717. of the Revised Code, and all applicable Administrative Code rules adopted thereunder.  For the purposes of this rule, reheating a prepared home delivered meal is not the same as preparing a meal.

* * *

(f) May include a therapeutic diet that requires a daily amount or distribution of one or more specific nutrients in order to treat a disease or clinical condition, or eliminate, decrease or increase certain substances in the consumer's diet.  A therapeutic diet must be ordered by a licensed physician. A new order must be documented in the consumer's clinical record every ninety days.

(3) Home delivered meals shall not:

(a) Include services or activities performed in excess of what is approved on the consumer's all services plan.

(b) Supplement or replace meal preparation activities that occur during the provision of waiver nursing, personal care aide, adult day health center, home care attendant or any other similar services.

(c) Supplement or replace the purchase of food or groceries.

* * *

{¶ 11} The ODJFS, the staff hearing officer, and the administrative appeal officer, found that the home-delivered meals were duplicative under Ohio Adm.Code 5160-46-04(D)(3), which precludes home-delivered meals if they "supplement or replace" other meal preparation activities that the consumer receives. The trial court found substantial, probative and reliable evidence to support this conclusion.

{¶ 12} First, Rudd asserts that the trial court gave improper weight to hearsay evidence, namely the case notes compiled by his caregivers; he contends that his sworn testimony was entitled to greater weight.

{¶ 13} Although administrative appeals to government agencies are required to comport with fundamental aspects of due process, they are not judicial proceedings. Consequently, the rules of evidence "do not directly apply in administrative proceedings[.]" *Plain Loc. Schools Bd. of Edn. v. Franklin Cty. Bd. of Rev.,* 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20; *Simon v. Lake Geauga Printing Co.,* 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982); *Farran,* 8th Dist. Cuyahoga No. 99851, 2014-Ohio-823, ¶ 5. It is a well-settled principle of administrative law that administrative agencies are not bound by the rules of evidence and that hearsay is admissible in administrative proceedings. *Shephard v. Ohio Dept. of Job & Family Serv.,* 166 Ohio App.3d 747, 2006-Ohio-2313, 853 N.E.2d 335, ¶ 22 (8th Dist.).

{¶ 14} When evidence is admitted despite being hearsay, the trier of fact must consider whether the evidence is reliable enough to be considered substantial and probative. *In re Petition for Annexation of 162.631 Acres,* 52 Ohio App.3d 8, 15, 556 N.E.2d 200 (10th Dist.1988). Evidence is reliable if it "can be confidently trusted" and there is "a reasonable probability that the evidence is true." *Beachland Ents. Inc. v.*

*Cleveland Bd. of Rev.,* 8th Dist. Cuyahoga No. 99770, 2013-Ohio-5585, ¶ 63-34. The reliability of evidence goes to its weight, not its admissibility. *Farran* at ¶ 5.

{¶ 15} The personal care aides and nurse who work with Rudd did not testify at the hearing; the content of their case notes was hearsay. We need not elaborate on this characterization, because even if the notes were hearsay, they were admissible in the administrative proceedings if the court found them to be reliable. Although Rudd testified at the hearing, he relied on evidence such as the opinions of his doctor and food-service provider, as reflected in letters he references and presented at the hearing; because the doctors and food-service provider did not testify at the hearing, much of the evidence offered by Rudd was also hearsay. Since reliable hearsay is permitted in administrative proceedings, and because both parties relied on such evidence to some extent, we cannot agree with Rudd's argument that the administrative hearing officer or the trial court erred in crediting such evidence.

{¶ 16} Rudd also contends that the trial court erred in failing to give deference to the opinions of his treating physician. Rudd submitted a letter from his podiatrist which stated the importance of Rudd's eating meals specifically prepared for a person with his medical condition, that the home delivery of meals from Clossman was meeting this need, that "[p]reparation of meals by a home health aide from food purchased with food stamps would * ** not meet these requirements," and that a change in Rudd's home-delivered meals "may put his health at risk."[1]

{¶ 17} The administrative hearing officer and the trial court could have reasonably

---

[1]The record also contains a letter from a nurse practitioner at an internist's practice, stating, in total, "Please allow my patient, Timothy Rudd, to have home delivered meals due to [his medical condition] and physical deconditioning." Rudd does not make reference to this letter in his brief.

concluded that the letter submitted by the podiatrist did not compel the continuation of home-delivered meals. First, the letter was not written until April 8, 2014 (after the March reassessment by ODJFS), and Rudd does not claim that this letter was the basis for the provision of his home-delivered meals. While acknowledging the importance of a healthy diet, the administrative hearing officer specifically noted the absence of any evidence in the podiatrist's letter or otherwise that the home-delivered meals or any "therapeutic diet" had been ordered for Rudd by a licensed physician.

{¶ 18} Second, the podiatrist's letter does not address the duplication of services which was at the core of ODJFS's decision to terminate the home-delivered meals. Rudd's need for meals designed with his medical issues in mind was not in dispute. The relevant question was whether Rudd's home-delivered meals were supplementing or replacing meal preparation activities provided by the personal care aides. Steve Knowland, a clinical supervisor with CareStar (an agency that administers Medicaid programs in Ohio), testified at the administrative appeal hearing that the Ohio Home Care program provides a "cost-effective alternative" (staying in one's own home) for Medicaid recipients who are "medically appropriate for institutional placement."

{¶ 19} Third, other evidence presented at the hearing or in the record contradicted assumptions in the podiatrist's letter that Rudd's food was "purchased with food stamps" and that a personal care aide's cooking could not meet Rudd's dietary requirements. Knowland testified that Rudd's personal care aides had been or could be trained to provide meals appropriate to Rudd's particular medical condition. (He did not know if the current aides had been trained for that purpose.) The aides' notes reflected that they helped him with his finances, that he had money for food, that Rudd's pantry was

well-stocked, that the aides prepared extra food for him in case he got hungry when the aides were not there or when the meals did not satisfy him, and that he ordered food over the internet and enlisted the aides to collect food from food banks. Knowland stated that the home-delivered meals are not a means of addressing shortfalls or other demands on one's budget, and that an individual receiving ODJFS services can request a review of his budget, food stamp allowance, etc., if financial difficulties need to be addressed. The record did not require the hearing officer to accept the podiatrist's apparent assumption that Rudd's food came primarily from food stamps or the doctor's conclusion that home health aides could not prepare food that would "meet [Rudd's] requirements."

{¶ 20} Finally, Rudd argues that he was entitled to home-delivered meals because he "met the regulatory requirement" that such meals be ordered by a physician. In support of this argument, Rudd relies on his own testimony at the hearing that his "primary doctor" had ordered the meals and had "designed a meal plan" for him. He also asserts in his brief that home-delivered meals "would never have been delivered if they had not been ordered by a physician."

{¶ 21} Rudd's arguments are weakened by the record in several respects. First, Ohio Adm.Code 5160-46-04(D)(1) states that the meals may be provided where a need is identified in the ODJFS assessment process; it does not necessarily require an order from a physician. A physician's order is required for a "therapeutic diet that requires a daily amount or distribution of one or more specific nutrients;" where a "therapeutic diet" is required, a "new order must be documented in the consumer's clinical record every ninety days." In other words, not all home-delivered meals are provided pursuant to a therapeutic diet ordered by a physician, and the administrative hearing officer found no

evidence of such an order in Rudd's case. Moreover, the regulation treats a doctor's order as a condition of *eligibility* for certain home-delivered meals; it does not require home-delivered meals to be provided on a doctor's order.

**{¶ 22}** Rudd had been receiving home-delivered meals for many years at the time of the hearing, and he did not provide any conclusive evidence that a doctor had issued an order for a "therapeutic diet" or had renewed such an order every ninety days. Clossman submitted a letter stating that its "dietetically approved meals" are provided "under the auspices of the consumer's doctor via signed doctor's orders which authorize consumer appropriate diets," but the letter does not contain any statements specifically related to Rudd.

**{¶ 23}** Viewing the evidence as a whole, we cannot conclude that the administrative hearing officer was required to credit the podiatrist's opinion or that the trial court abused its discretion in finding that there was reliable, probative and substantial evidence to support the decision of the hearing officer. Knowland's testimony established that personal care aides provided through the Ohio Home Care and Medicaid program were capable of providing medically-appropriate meals, and the case notes established that Rudd's personal care aides were, in fact, cooking and shopping for him to supplement the home-delivered meals provided by Clossman. Based on the evidence presented at the hearing, the trial court did not abuse its discretion in affirming the administrative officer's conclusion that Rudd was receiving a duplication of services, and that such supplemental or replacement services were prohibited by Ohio Adm.Code 5160-46-04(D)(3).

**{¶ 24}** The assignments of error are overruled.

**{¶ 25}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Byron K. Bonar
James H. Lockwood
Hon. Jeannine N. Pratt