Turnee, J.
 

 Appellant claims that the decision of the Board of Tax Appeals is unreasonable and unlawful.
 

 The controversy revolves around two expert witnesses, one on behalf of the appellant and one on behalf of the appellee. Appellant’s claim is' that the Board of Tax Appeals compromised by allowing appellant “half a loaf” instead of accepting as final the lesser valuation by its own expert.
 

 It would serve no useful purpose to quote the corn dieting evidence of these experts both of whom we find to be qualified. Therefore, we shall merely state our conclusions based upon a review of the record including all the testimony offered.
 

 Appellee’s expert fixed the cubic foot measure of the hotel building at 5,036,522 cubic feet, while appellant’s expert said there were but 4,860,020 cubic feet, a difference of 176,502 cubic feet. Appellant’s expert testified that the hotel building contained a gross of 6,058,670 cubic feet, but reduced the figure on account ■of “light court areas.” The Board of Tax Appeals accepted appellant’s figure.
 

 Appellant’s expert fixed a valuation of 47% cents per cubic foot on the hotel building without the 20 per cent blanket reduction. Appellee’s expert fixed a valuation on the hotel building of 65 cents per cubic foot with an allowance of 20 per cent blanket reduction resulting in a net figure of 52 cents per cubic foot.
 

 The board found that 51 cents per cubic foot was a fair reproduction cost of the hotel building for 1944.
 

 Appellant’s expert deducted 50 per cent for combined depreciation and obsolescence on the hotel building.
 

 Appellee’s expert deducted 30 per cent for ordinary
 
 *234
 
 depreciation and 10 per cent for functional depreciation on the same building.
 

 The board found that 45 per cent was a fair figure to be used for total hotel building depreciation.
 

 Appellant’s expert fixed the reproduction value of the service building at $89,277. Appellee’s expert fixed the replacement value of the service building at $87,641. Appellant’s expert took a total of 35 per cent for structural and condition depreciation, 80 per cent depreciation on the fixed machinery and 25 per ce*nt depreciation on the concrete stack. Appellee’s expert allowed 30 per cent depreciation on the service building, 50 per cent depreciation of an 80 per cent reproduction cost of the machinery and approximately 50 per cent bn 80% of the reproduction cost of the stack.
 

 Appellant’s expert found the value of the fixed machinery after depreciation as $29,640. Appellee’s expert fixed the sound value of the machinery at $32,000 after allowing depreciation.
 

 The board allowed 35 per cent for depreciation on a valuation of $87,641 for the service building, 65 per cent depreciation for the fixed machinery, equipment and stack.
 

 Appellant says in its brief:
 

 “Granting, for this purpose, however, the complete discretion of the board to determine the depreciation rate, we submit it may not summarily dismiss appellant’s earning capacity as affected by the inefficiency of its hotel plant, demonstrated by this expert. ’ ’
 

 Appellant’s building appraisal expert did not consider earning capacity but appellee’s expert did. Appellant did offer earning capacity evidence. We need not stop to analyze that evidence or the credit which the board should have given to items of expense not broken down prior to arriving at net income.
 

 
 *235
 
 We are unable to find that the board “summarily dismissed” the earning capacity feature. It is set forth in the board’s decision: “It is well settled that the earning capacity of real estate may be considered in fixing its value for taxation * * * and the board has given this factor consideration.” Then after discussing the evidence the board’s decision continues: “As to this the board finds that the taxable valuation of this building as herein determined should be neither increased or decreased
 
 solely
 
 with respect to the earning capacity of the property, its availability for hotel or other purposes, its present condition, the
 
 income factor
 
 and all other factors appearing in the record tending to pyove its value, the board :finds the true value in money of the hotel building to be $1,363,236.” (Italics ours.) Appellee’s expert contended that the true value, after deducting the 20 per cent blanket deduction, was $1,649,974, while appellant’s expert fixed the amount at $1,154,255 without the 20 per cent blanket deduction.
 

 Appellant claims that the hoard did not take into consideration the 20 per cent blanket reduction. We cannot agree with appellant. While appellant’s expert stated that he did not make the 20 per cent blanket reduction, appellee’s expert did. After making the 20 per cent blanket reduction, appellee’s expert arrived at a reproduction cost of 52 cents per cubic foot. The board fixed 51 cents per cubic foot as a fair reproduction cost.
 

 Appellant attacks the qualifications of appellee’s expert. We agree with the finding of the board that “the appraisers for the appellant and appellee are high grade men, both experienced in'making appraisals of the type of property here involved.”
 

 Besides, the board had the right to take into consideration that appellee’s expert (appraiser) made his appraisal in 1944 as a special deputy county auditor
 
 *236
 
 in connection with other sexennial appraisal work, while appellant’s expert made his appraisal in 1945 for a particular client The board had the right under the record to take into consideration also the evidence that the appraisal made by appellee’s expert was reviewed and substantially approved by a board of local authorities in the real estate field. Both experts based their appraisal on 1940 building costs.
 

 Appellant claims for the first time in this court that an error of one-half foot was made in the land value due to the use of 1% feet for “alley influence” instead of one foot. In the opening statement before the Board of Tax Appeals, counsel for appellant stated: “There is no complaint as to the value of the, land.” The board in its decision found: “There is no complaint as to the value of the land and no evidence was introduced with reference thereto. This appeal therefore will be confined to the consideration of building values.”
 

 During oral argument it was admitted that the matter of land value was not properly before this court. It is well settled that this court will not consider matters which were not presented to the Board of Tax Appeals' but will limit ourselves to the record as made.
 

 In accordance with
 
 the
 
 statute, Section 5611-2, General Code, conferring revisory jurisdiction upon this court, we are required to affirm the decision of the Board of Tax Appeals if upon hearing and consideration of the record and evidence we are of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful. Being of the opinion that such decision is reasonable and lawful, the same should be and hereby is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Zimmerman, Bell, Williams and Hart, JJ., concur.