GLOBAL KNOWLEDGE TRAINING, L.L.C., APPELLANT, *v.* LEVIN,

TAX COMMR., APPELLEE.

**[Cite as *Global Knowledge Training, L.L.C. v. Levin,***

**127 Ohio St.3d 34, 2010-Ohio-4411.]**

*Taxation — Use tax on computer training — First Amendment, due process, and*
*equal protection challenges were not properly raised — Record did not*
*support taxing two courses — Decision affirmed in part and reversed in*
*part.*

(No. 2009-1543 — Submitted May 11, 2010 — Decided September 23, 2010.)

APPEAL from the Board of Tax Appeals, No. 2006-V-471.

_____

**O'DONNELL, J.**

**{¶ 1}** Global Knowledge Training, L.L.C., a self-described "world leader in education in the areas of information technology, telecommunications, and broadband," appeals from a decision of the Board of Tax Appeals ("BTA"), which affirmed a determination of the tax commissioner to impose a use tax on 34 computer-related training courses that Global provides to employees of its corporate clients in Ohio based on the commissioner's conclusion that the courses were actually taxable computer-services training.

**{¶ 2}** On appeal, Global raises constitutional challenges, asserting that the taxing statutes violate free speech by taxing speech based on content and that they deny equal protection of law by taxing certain types of training courses and not others without a compelling reason for the distinction. Global further claims that the regulatory language is unconstitutionally void for vagueness, as it fails to clarify definitions such as "computer equipment" and "computer systems." Global also challenges the tax imposed on training courses involving routers and

switches, which it asserts are not computer equipment; courses involving nontaxable application-software training as opposed to systems-software training; and beginning courses taught to employees who do not, in Global's view, qualify as "computer programmers and operators." The tax commissioner posits that the constitutional claims presented by Global are not properly raised in this court and that Global has not demonstrated that the decision of the BTA with respect to the other challenges is unreasonable or unlawful.

{¶ 3} We lack jurisdiction over Global's free speech and equal protection claims because Global failed to raise them in its notice of appeal to the BTA, and we lack jurisdiction over its void-for-vagueness claim because Global failed to specify it in its notice of appeal to this court. Regarding its nonconstitutional claims, Global has not demonstrated that the decision of the BTA was unreasonable or unlawful except with respect to two courses, which involved nontaxable application-software training, erroneously characterized as taxable by the commissioner.

{¶ 4} Accordingly, except for its decision regarding tax assessed on two courses, the decision of the BTA is affirmed.

### Facts and Procedural History

{¶ 5} According to its Senior Vice President for Product Management and Enterprise Solutions, Global "provide[s] training for courses on a variety of topics to corporate employees, funded by the corporation, [and] to professionals in that corporation employed by the corporation." The tax commissioner performed an audit of Global as a vendor of such services for the period July 1, 1997, through June 30, 2000, and determined that Global had improperly failed to collect and remit use tax on a number of courses taught in various business locations in Ohio during that period. The commissioner determined that the courses at issue constituted taxable "computer services" under the "training" provision of R.C. 5739.01(Y)(b). With preassessment interest and penalty, the

assessment amounted to $103,269.45. In his final determination, the tax commissioner remitted the penalty, resulting in a final assessment of $91,872.15.

{¶ 6} When purchased for use in business, computer services are subject to sales or use tax in Ohio. R.C. 5739.01(B)(3)(e), 5739.02, and 5741.02(A)(1) and (C)(2). The definition of "computer services" includes "training of computer programmers and operators" when the training is "provided in conjunction with and to support the sale, lease, or operation of taxable computer equipment or systems." R.C. 5739.01(Y)(1)(b).

{¶ 7} The tax commissioner promulgated an administrative rule to clarify the statutory language. The version of the rule in effect during the audit period defined "computer services" as "[t]raining computer programmers and operators," subject to the additional definitions for "programming" and "training." Former Ohio Adm.Code 5703-9-46(A)(2), (5), and (6), 1992-1993 Ohio Monthly Record 824-825, effective March 21, 1993. [1]

{¶ 8} The rule defined "training" to mean "instructing computer programmers and operators in the use of computer equipment and its system software." Id. at 825. The rule then defined "systems software" as "all programming that controls the basic operations of the computer, such as arithmetic, logic, compilation or similar functions whether it is an integral part of the computer hardware or is contained on magnetic media." Id. Explicitly excluded from "training" was "instruction in the use of application software or other result-oriented procedures." Id. Reinforcing the same point, the rule stated that "the service of writing, changing, or debugging of application software" was not included in "programming." Id. Finally, the rule defined "application software" to include "programs that are intended to perform business functions or

---

1. Revisions to Ohio Adm.Code 5703-9-46 occurred in 2004.

control or monitor processes." Id. Thus, with respect to software training, the rule in effect during the audit period extended the tax to training on "systems software" but not to application software. Id. However, with respect to the types of equipment involved in the training or the persons attending the training, the rule relied more broadly upon the terms "computer equipment" and "computer programmers and operators." Id.

{¶ 9} Global appealed the tax commissioner's final determination to the BTA, arguing that the services it provided did not qualify as "taxable computer services" because (1) it involved training on routers and switches, not "computer equipment," (2) several classes involved nontaxable application software rather than taxable systems software, and (3) some of those attending courses often did not qualify as "computer programmers and operators" as required by statute. Its notice of appeal to the BTA, however, did not raise any constitutional challenges to R.C. 5739.01(Y)(1)(b).

{¶ 10} In its hearing before the BTA, Global presented the testimony of Michael Kevin Fox, a vice-president of Global, and offered ten exhibits in support of its contentions. The BTA rejected Global's claims, finding that routers and switches qualified as "computer equipment," the courses challenged pertained to systems software, except with respect to two challenged courses, and the persons trained qualified as "computer programmers and operators" as used in R.C. 5739.01(Y)(1)(b).

{¶ 11} Global appealed the BTA's decision to this court, challenging the constitutionality of R.C. 5739.01(Y)(1)(b) with respect to free speech and equal protection and urging that the statute as utilized with the tax commissioner's rule is void for vagueness. Global also presents three propositions of law contesting matters raised before the BTA.

**Standard of Review**

4

{¶ 12} In *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783, we reiterated that our standard of review from a decision of the BTA is whether it is "reasonable and lawful." While we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion," *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789, we will affirm the BTA's resolution of factual issues if the record contains reliable and probative evidence that supports the BTA's findings. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483; *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. As we noted in *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10, the tax commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." Consequently, the taxpayer carries the burden "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. Specifically, "when an assessment is contested, the taxpayer has the burden ' "to show in what manner and to what extent" ' the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect." *Maxxim Med., Inc. v. Tracy* (1999), 87 Ohio St.3d 337, 339, 720 N.E.2d 911, quoting *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687, quoting *Midwest Transfer Co. v. Porterfield* (1968), 13 Ohio St.2d 138, 42 O.O.2d 365, 235 N.E.2d 511, syllabus.

### Constitutional Claims

{¶ 13} Global presents three propositions of law challenging R.C. 5739.01(Y)(1)(b), asserting that it infringes on constitutionally protected speech, violates its constitutional right to equal protection, and is void for vagueness. The tax commissioner contends that these claims are jurisdictionally barred because

they either were not specified in the notice of appeal to the BTA or were not sufficiently specified in the notice of appeal to this court.

*Free Speech and Equal Protection Challenges*

{¶ 14} Global asserts that R.C. 5739.01(Y)(1)(b) violates the free-speech guarantees of the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution because the definition of "training" provided in former Ohio Adm.Code 5703-9-46(A)(6), 1992-1993 Ohio Monthly Record 825, impermissibly distinguishes between training in systems software and application software based on the content of speech. Global also advances an equal-protection claim pursuant to the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution, arguing that because otherwise similarly situated communicators are taxed or not taxed based on the content of their speech, the tax discriminates based on whether or not a person has exercised a fundamental right. In response, the tax commissioner contends that we lack jurisdiction to consider these claims because Global failed to raise them in its notice of appeal to the BTA. Relying on our decision in *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, Global urges that these constitutional challenges are properly presented to this court in the first instance.

{¶ 15} R.C. 5717.02 provides that a notice of appeal to the BTA "shall * * * specify the errors therein complained of." It is well settled that these requirements are jurisdictional prerequisites to the exercise of authority by the BTA or this court on appeal. See, e.g., *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 26 (jurisdiction of the BTA is "limited to errors specified in the notice of appeal"); *Osborne Bros. Welding Supply, Inc. v. Limbach* (1988), 40 Ohio St.3d 175, 178, 532 N.E.2d 739 (where error was not specified, the BTA and the court on appeal lack jurisdiction over it).

**{¶ 16}** However, we recognized an exception to this rule in *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, in which we explained that "[t]he question of whether a tax statute is *unconstitutional on its face* may be raised initially in the Supreme Court or the courts of appeals, although not previously raised before the Board of Tax Appeals." (Emphasis added.) Id. at paragraph two of the syllabus. A facial challenge may therefore be raised for the first time in this court because the "Board of Tax Appeals is an administrative agency, a creature of statute, and is without jurisdiction to determine the constitutional validity of a statute." Id. at paragraph one of the syllabus.

**{¶ 17}** Pursuant to *Cleveland Gear*, "the facial unconstitutionality of the legislation * * * is to be decided by considering the Act itself without regard to extrinsic facts." Id. at 231, 520 N.E.2d 188; see also *ComTech Sys., Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 100-101, 570 N.E.2d 1089 (a taxpayer's constitutional challenge to the "one subject rule" involved facial attacks and could be considered by this court in the first instance because the court needed to review only the act and its history alone, without considering extrinsic facts).

**{¶ 18}** While Global argues in its brief that its free speech and equal protection claims are facial challenges to R.C. 5739.01(Y)(1)(B), permitting it to raise them in the first instance in this court, the focus of Global's challenge does not involve the text of R.C. 5739.01(Y)(1)(B), which merely defines "computer services"; rather, Global contends that the statute *as construed by the administrative rule* violates its rights to free speech and equal protection. Specifically, Global challenges the distinction made in former Ohio Adm.Code 5703-9-46(A)(5), 1992-1993 Ohio Monthly Record at 825, between course content involving *systems software* and course content involving *application software* as exemplifying the content-based distinction that offends free-speech and equal-protection principles. However, unlike former Ohio Adm.Code 5703-

9-46(A), R.C. 5739.01(Y)(1)(b) contains no explicit tax-related distinction between *systems-software* training and *application-software* training. While federal courts sometimes consider administrative practice when evaluating facial challenges to a statute, see *Forsyth Cty., Georgia v. Nationalist Movement* (1992), 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it"), for purposes of the *Cleveland Gear* exception, only the text of the statute itself may be considered when evaluating a "facial" challenge. *Cleveland Gear*, 35 Ohio St.3d at 231, 520 N.E.2d 188.

{¶ 19} To the extent that Global seeks to challenge the constitutionality of former Ohio Adm.Code 5703-9-46(A)(5), Global could have challenged the administrative rule before the BTA, which does have jurisdiction to invalidate an administrative rule, but did not do so. See R.C. 5703.14(C) (affected person may file an application for review with the BTA to determine the reasonableness of an administrative rule promulgated by the tax commissioner); see also *Stone v. Limbach* (June 30, 1988), BTA No. 1985-C-931, at 21 (invalidating tax rule, noting that "while O.A.C. Rule 5703-25-01 was properly promulgated, it is unreasonable as it conflicts with R.C. Section 5727.15").[2]

{¶ 20} Based on the foregoing, Global's free-speech and equal-protection claims are not facial challenges to R.C. 5739.01(Y)(1)(b) as contemplated by *Cleveland Gear*. Accordingly, we lack jurisdiction to consider them because they were never presented to the BTA.

*Vagueness Challenge*

---

2. In any event, Global failed to challenge the constitutionality of the administrative rule in the notice of appeal to this court, and we therefore lack jurisdiction to consider this claim. See *Newman v. Levin,* 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 26.

{¶ 21} Global also argues that the terms "computer equipment" and "computer systems" (sic) in R.C. 5739.01(Y)(1)(b) are "impermissibly vague" and therefore violate the due process guarantees of the Ohio and United States Constitutions. The tax commissioner responds that Global failed to raise its vagueness claim in its notice of appeal filed in this court.

{¶ 22} R.C. 5717.04 provides that a notice of appeal from the BTA to the court "shall set forth the decision of the board appealed from and the errors therein complained of." As this court stated in *Newman v. Levin,* 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 28, quoting *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 31, 630 N.E.2d 329, fn. 1, "when a litigant fails to raise a particular argument in the notice of appeal to the court, the court 'do[es] not have jurisdiction to consider the argument.' " See also *Lawson Milk Co. v. Bowers* (1961), 171 Ohio St. 418, 420, 14 O.O.2d 217, 171 N.E.2d 495 (dismissing an appeal from the BTA because the notice did "not sufficiently set forth 'the errors therein complained of' ").

{¶ 23} In its notice of appeal to the court, Global argues that the BTA "erroneously and unjustifiably applied R.C. 5739.01(B)(3)(e) and R.C. 5739.01(Y)[1](b) to Appellant's training courses at issue based upon the content of and the pedagogical methods used in the courses in violation of Sections 2 and 11 of Article I of the Ohio Constitution and the First and Fourteenth Amendments to the United States Constitution." Notably, Global does not expressly allege that the statutory definitions of "computer equipment" and "computer systems" are unconstitutionally vague and therefore constitute a deprivation of due process. Nor does a reference to the Fourteenth Amendment itself sufficiently assert that these statutory provisions violate due process and are void for vagueness. Accordingly, Global's notice of appeal does not adequately set forth a constitutional vagueness challenge, and we, therefore, lack jurisdiction to consider it.

**Statutory Claims**

{¶ 24} Global does raise three separate claims pertaining to the application of R.C. 5739.01 and former Ohio Adm.Code 5703-9-46 to its training courses, arguing that the commissioner impermissibly assessed tax on several of its courses. In its brief, Global urges that 24 of its courses should not be taxed: 17 that involved instruction in the use of routers and switches, six that involved nontaxable application software, and ten that Global claims involved introductory courses not attended by "computer programmers and operators." The tax commissioner maintains that each of these courses is properly taxed as "computer services."

*Routers and switches as "computer equipment"*

{¶ 25} Global argues that several courses effectuated training on routers and switches, not "computer equipment" as that term is used in R.C. 5739.01(Y)(1)(b), and are therefore not taxable. Specifically, Global urges that training may be subject to the use tax only if the equipment involved in the training is a computer. The tax commissioner responds that training on routers and switches involves training on "computer equipment" or "computer systems" and is therefore taxable.

{¶ 26} R.C. 5739.01(Y)(1)(b) does not limit taxation to courses involving training on computers. Rather, the statute levies the tax on instruction "provided in conjunction with and to *support the * * * operation* of taxable computer equipment *or systems*." (Emphasis added.) The evidence presented to the BTA indicates that the instruction provided by Global in training employees on routers and switches would support the operation of computer systems. Significantly, Global's vice president testified at the BTA hearing that "in today's network, the routing and switching environment is used in a more complex way to attach telephones, computers and printers." In addition, the course manual for "Understanding Network Fundamentals," introduced at the BTA, shows that

Global's courses focus on "information technology" training and that such training includes instruction relating to routers and switches.[3]

{¶ 27} Accordingly, the BTA reasonably and lawfully applied the law as to routers and switches, its findings are supported by reliable and probative evidence, and we affirm this part of its decision. See *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13 (a BTA decision is to be affirmed if it correctly applied the law).

*Application software v. systems software*

{¶ 28} Global also argues that six of its training courses involved training in nontaxable *application* software as opposed to taxable *systems* software: # 6950 PERL Scripting, # 6980 PERL Scripting with CGI, # 8700 Nortel Hub Activity, # 8800 Router Installation & Basic Configuration, # 8900 Router Configuration & Management, and # 9300 Troubleshooting TCP/IP Networks.

{¶ 29} With respect to the BTA's tax determination involving # 6950 PERL Scripting and # 6980 PERL Scripting with CGI, Global asserts that PERL and PERL with CGI are programming languages that are "used in web and network applications" and further argues that this instruction is not taxable, because the programming language is used to write programs in the nature of application software, not systems software. The tax commissioner, on the other hand, relies on testimony that "operating systems administrators" use the programming language. However, that testimony does not by itself establish whether these languages primarily involve systems software or application software.

---

3. To the extent that Global argues that routers and switches might be used as part of telecommunications or cable networks, as distinct from computer networks or systems, Global has not shouldered its burden as the taxpayer to offer proof that any particular course that the tax commissioner assessed was not taxable because it pertained to telecommunications systems, as opposed to computer systems. See *Maxxim Med., Inc. v. Tracy* (1999), 87 Ohio St.3d 337, 339-340, 720 N.E.2d 911.

**{¶ 30}** In this case, the BTA determined that the PERL courses involved application software because "Mr. Fox testified that both courses cover systems software and that VMS stands for a software operation." However, that testimony was relative to the course Open VMS Fundamentals, not the PERL courses. Contrary to the BTA's determination, Fox did not provide any testimony as to whether the *PERL* courses related to systems software. Rather, Global characterized PERL and PERL with CGI as "used in web and network applications" before the commissioner and the BTA. Given the uncontroverted evidence that the courses at issue involve programming languages that are "used in web and network applications," we note that the record simply does not support a finding that these courses qualify as taxable training. Therefore, we reverse the BTA's determination with respect to these courses. See *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision* (1997), 78 Ohio St.3d 105, 107, 676 N.E.2d 881 (reversing a BTA decision that "reached the factual conclusions" that "the testimony and evidence [did] not support"), citing *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 516, 660 N.E.2d 440.

**{¶ 31}** With respect to # 8700 Nortel Hub Activity, # 8800 Router Installation & Basic Configuration, # 8900 Router Configuration & Management, and # 9300 Troubleshooting TCP/IP Networks, Global failed to properly challenge these courses as systems software in the BTA,[4] and therefore, they were not considered by the BTA. We decline to address the propriety of the tax assessed in conjunction with these courses in the first instance. *Neil House Hotel Co. v. Franklin Cty. Bd. of Revision* (1946), 147 Ohio St. 231, 34 O.O. 127, 70 N.E.2d 646, paragraph one of the syllabus.

> *Individuals attending introductory level courses as*

---

4. In its decision and relying on an exhibit provided by Global to the BTA, the BTA noted that Global had challenged only four courses as involving nontaxable training in systems software. Global has not corrected the BTA's characterization of its claims to the BTA.

*"computer programmers or operators"*

**{¶ 32}** Global next argues that the attendees of some of its courses were not "computer programmers and operators." As noted previously, taxable "computer services" include "training of computer programmers and operators, provided in conjunction with and to support the sale, lease, or operation of taxable computer equipment or systems." R.C. 5739.01(Y)(1)(b).

**{¶ 33}** Global argues that the introductory-level courses were so basic in their content that the people attending the training did not qualify as either "computer programmers" or "operators" as referenced in the statute. The tax commissioner believes that the training course attendees qualified, and therefore, the courses are taxable.

**{¶ 34}** The dispute as to the scope of the term "operators" stems from a prior decision of the BTA, *Mentor Technologies Ltd. Partnership v. Tracy* (Aug. 25, 1995), BTA No. 94-A-1058, 1995 WL 514159, which the BTA relied on in the instant case. In *Mentor Technologies*, the commissioner argued that "computer operators" means those individuals who "operated computers in the performance of their duties for their employers." Id. at *2. The BTA rejected the commissioner's position, holding that a "computer operator" must possess "a higher level of training and understanding of the computer." Id. at *3.

**{¶ 35}** We disagree. First, despite Global's claim that beginners taking introductory courses cannot be "computer programmers and operators," the General Assembly neither limited these terms to those with computer experience and knowledge nor further defined them. A plain reading of R.C. 5739.01(Y)(1)(b) reveals that "computer services" includes training of individuals who are not yet computer programmers or operators and is not limited to those already trained. In fact, an "operator" is defined simply as "a worker who operates a * * * specified machine or device as his regular trade." Webster's Third New International Dictionary (1986) 1581.

**{¶ 36}** Second, it was unnecessary for the General Assembly to further define these terms, as it expressly limited the scope of the tax in a manner that is relevant to the question of who may qualify as a "computer programmer or operator" by directing that computer services are subject to tax only when they are purchased "*for use in business*." (Emphasis added.) R.C. 5739.01(B)(3)(e). In other words, training becomes subject to the tax when an employer purchases the training to enable its employees to operate computers in the context of their employment. See *Compuserve, Inc. v. Limbach* (1994), 93 Ohio App.3d 777, 780, 639 N.E.2d 1227 (when R.C. 5739.01(B)(3)(e) was enacted, "the provision of computer services to business customers became a taxable transaction," while the "provision of computer services to nonbusiness customers remained nontaxable"). The record in this case demonstrates that the commissioner assessed the tax with respect to employer-purchased training that enabled its employees to operate computers and computer systems in the course of their employment. Thus, the "for use in business" requirement of R.C. 5739.01(B)(3)(e) assures that the persons being trained qualify as computer operators.

**{¶ 37}** Accordingly, the BTA reasonably and lawfully applied the law as to the status of the trainees, its findings are supported by reliable and probative evidence, and we affirm this part of its decision. See *HIN, L.L.C.*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13.

## Conclusion

**{¶ 38}** Based on the foregoing, this court lacks jurisdiction to consider Global's constitutional claims because they either were not properly presented to the BTA or were not incorporated into the notice of appeal filed in this court. With respect to its other claims, Global has not demonstrated that the determination made by the BTA in connection with routers and switches, application software, and the status of trainees was unreasonable or unlawful, and

we therefore affirm the decision, except that we reverse with respect to the PERL and PERL with CGI courses, as they involve nontaxable training on application software.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

_____

Buckingham, Doolitle & Burroughs, L.L.P., Steven A. Dimengo, and David Hilkert; and Ropes & Gray, L.L.P., William I. Sussman, and Michael P. Robotti, for appellant.

Richard Cordray, Attorney General, and Damion Clifford, Assistant Attorney General, for appellee.

_____