[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Apple Group Ltd. v. Medina Cty. Bd. of Revision,* Slip Opinion No. 2014-Ohio-2381.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2381

APPLE GROUP LTD., APPELLANT, *v.* MEDINA COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Apple Group Ltd. v. Medina Cty. Bd. of Revision,* Slip Opinion No. 2014-Ohio-2381.]**

*Real property taxation—Evidence before Board of Tax Appeals negating auditor's valuation—Independent valuation by Board of Tax Appeals—Carryover value.*

(No. 2013-0149—Submitted February 25, 2014—Decided June 10, 2014.)

APPEAL from the Board of Tax Appeals, No. 2009-K-2101.

_____

**Per Curiam.**

**{¶ 1}**  This real-property-valuation case concerns the proper valuation of unbuilt lots in a residential subdivision for tax year 2008.  The Board of Tax Appeals ("BTA") rejected the comparable-sales appraisal submitted by the taxpayer, Apple Group Ltd., and because it concluded that the taxpayer had failed to discharge its burden of showing a different value, the BTA reverted to the

county's valuation of the parcels. Contrary to the BTA's analysis, we conclude that Apple Group presented evidence that negated the auditor's determination of value and that triggered the BTA's duty to perform an independent valuation of the property for tax year 2008. The BTA then had the duty to determine whether to carry a new valuation for 2008 forward to tax year 2009. As for tax year 2010, the BTA properly decided that that tax year lay beyond the scope of inquiry in this case. We therefore affirm in part, reverse in part, and remand for further proceedings.

**Facts**

**{¶ 2}** At issue are 13 residential lots improved for building (road access, city water, natural gas, electric, and telephone service available to each lot), but without any houses built on them as of the lien dates at issue. The lots are part of a subdivision, called Trophy Club in Medina County, which includes lots not at issue.

**{¶ 3}** In Medina County, 2007 was a reappraisal year, but on the lien date for tax year 2007 (January 1, 2007), the lots at issue were part of a larger tract. According to the property record cards, that larger tract was subdivided into the current lots in June 2007. That created the need for the auditor to assign individual values to the 13 individual lots for the first time in the 2008 tax year. Based on comparable sales from the Trophy Club subdivision, the auditor set the value of each lot at $105,000. (Because the lots were unbuilt, there was of course no building value to assign.)

*1. The BOR retained the auditor's valuation*

**{¶ 4}** Apple Group filed a single complaint on March 31, 2009, challenging the valuation and proposing a reduced value of $65,000 for each of the 13 lots. As justification for the reduction, Apple cited "[m]arket data," "[d]ecline in values," and "[o]ther factors to be presented at the BOR hearing." At the BOR hearing, Apple's witness, Sandy Simich, testified that the Trophy

Club development involved three phases, of which the first two phases included the more desirable wooded lots, while the properties at issue were less desirable grassland parcels constituting phase three. Also at the BOR hearing, the auditor's witness, Chris Szelag, presented the comparables that the auditor had relied on in determining the $105,000 valuation for the lots. Those comparables were primarily 2005 and 2006 sales that had occurred when the market was stronger.

{¶ 5} On August 6, 2009, the BOR voted to retain the auditor's valuation on the grounds that Apple failed to prove a different value. Apple appealed to the BTA.

2. *The BTA rejected the appraisal evidence for a reduced valuation*

{¶ 6} At the BTA hearing, Apple presented the appraisal report and testimony of Richard Racek, an expert appraiser. The appraisal relies exclusively on the sales-comparison approach. The comparable sales are 15 in number— eight from the Trophy Club subdivision and seven from other subdivisions in a neighboring township. Based on the comparables, Racek concluded that the lots were worth $85,000 for tax year 2008 and $75,000 for tax years 2009 and 2010.

{¶ 7} On December 28, 2012, the BTA issued its decision. The BTA observed that "[s]ince the lots in issue have not recently transferred, appellant * * * offered into evidence the testimony and written appraisal prepared by Racek" for 2008, 2009, and 2010. BTA No. 2009-K-2101, 2012 WL 6846167, *1 (Dec. 28, 2012). Noting that Apple as appellant bore the burden of showing its right to a reduced valuation, the BTA proceeded to consider the probative character of the appraisal.

{¶ 8} The BTA questioned the appraiser's conclusions. Although the appraiser testified regarding a downturn both in the construction of new homes from 2005 through 2008 and a general decline in the market for residential real estate, the BTA found that the "sales data suggests that sales within the subject subdivision did not begin to reflect lesser transfer amounts until third quarter

3

2009." *Id.*, *3. The BTA felt free to disregard the lower prices garnered from sales out of other subdivisions on the grounds that those lower prices "may speak to the strength of that particular residential community" as opposed to the Trophy Club subdivision at issue. *Id.*

{¶ 9} Finally, the BTA noted that the two earlier sales out of the Trophy Club subdivision itself—the 2007 sale for $105,000 and the August 2008 resale for $110,000—"are consistent with and supportive of the auditor's valuation of $105,000." *Id.*, *3. In a footnote, the BTA took note of Simich's testimony that the 2008 sale for $110,000 was in a nicer portion of the subdivision, but pointed out that the appraiser "highlighted no such distinction." *Id.*, fn. 2.

{¶ 10} The BTA concluded that Apple Group "has failed to meet its affirmative burden on appeal." *Id.* Citing case law, the BTA implicitly found that it did not have sufficient evidence before it to perform an independent valuation of the lots. *Id.*, quoting *Simmons v. Cuyahoga Cty. Bd. of Revision*, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998) ("Where the BTA rejects the evidence presented to it as not being competent and probative, or not credible, and there is no evidence from which the BTA can independently determine value, it may approve the board of revision's valuation, without the board of revision's presenting any evidence").

{¶ 11} The BTA carried the 2008 valuation of the auditor over to tax year 2009, but it declined Apple Group's invitation to determine a value for tax year 2010. BTA No. 2009-K-2101, 2012 WL 6846167, *3, fn. 3.

### Analysis

### A. Apple's claim that the BTA should have valued three lots by using their sale prices is jurisdictionally barred

{¶ 12} Apple's first proposition of law states that the BTA decision is unreasonable and unlawful because the BTA "failed to recognize the recent, arm's-length sales of three sublots." Under this heading, Apple argues that the

4

BTA ought to have adopted the sale prices of those three parcels as the values of those parcels. Apple originally offered those sales not as direct evidence of the value of those parcels, but rather as comparable sales among other comparable sales. Apple itself did not draw the BTA's attention to the fact that the comparable sales included sales of three of the lots at issue, nor did Apple advance any argument before the BTA that those sale prices directly indicated the value of the parcels at issue.

{¶ 13} Apple has failed to preserve this issue for appeal. In its notice of appeal to this court, Apple sets forth no fewer than 16 assignments of error. None of them come close to stating the issue that Apple raises through its first proposition of law. Accordingly, the court lacks jurisdiction to grant relief to Apple Group on that ground. *See* R.C. 5717.04 (fifth paragraph) ("A notice of appeal shall set forth the decision of the board [of tax appeals] appealed from *and the errors therein complained of*" [emphasis added]); *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 28 (the court "lack[ed] jurisdiction to consider" a claim of error on appeal because "none of the errors raised in the notice of appeal to this court identif[ied]" that claim); *see also Global Knowledge Training, L.L.C. v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d 463, ¶ 23-24; *Fogg-Akron Assocs., L.P. v. Summit Cty. Bd. of Revision*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, ¶ 12.

## B. Racek's comparable-sales study negated the auditor's valuation and triggered the BTA's duty to perform an independent valuation

{¶ 14} Apple's second, third, and fourth propositions of law fault the BTA for failing to acknowledge and rely upon the expertise of its appraiser and the probative force of his comparable-sales analysis. But the BTA "is not required to adopt the valuation fixed by any expert or witness," because the BTA possesses "wide discretion in determining the weight to be given the evidence and the credibility of witnesses." *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of*

*Revision*, 44 Ohio St.2d 13, 336 N.E.2d 433 (1975), paragraphs two and three of the syllabus.  Given that discretion, the court has held that "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 14.

{¶ 15} But Apple's argument extends beyond the mere assertion that its appraisal ought to have been regarded as probative.  Apple argues alternatively that "[i]f the BTA did not find Mr. Racek's sales comparison approach appropriate, the BTA should have utilized the market data provided by Mr. Racek to adjust his value conclusion or the BTA could have utilized the market data provided by the Property Owner at the BTA hearing.  Therefore, the BTA had a duty to undertake an independent valuation of the property."

{¶ 16} This alternative argument invokes legal principles that the court has enunciated and enforced in the past.  Those principles are summarized in *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23-25.  Specifically, the appellant at the BTA has an initial burden to show a different value from that found by the county.  *Id*. at ¶ 23.  But when the record contains evidence negating the auditor's valuation, the BTA must determine whether there is sufficient evidence to allow an independent valuation of the property.  If there is sufficient evidence, the BTA must perform an independent valuation; if the evidence is not sufficient, the BTA may revert to the auditor's valuation.  *Id*. at ¶ 24-25.

{¶ 17} We agree with Apple's contention that the BTA had the duty to perform an independent valuation in this case.  While the BTA was justified in questioning the precise values assigned by Racek for tax year 2008 and tax year 2009, there is no question that the comparable sales documented a decrease in value within the Trophy Club subdivision over time.  Moreover, the sales that the

BTA relied upon as support for the auditor's higher valuation for tax year 2008 are not directly probative, because the testimony before the BOR revealed that the August 2008 sale for $110,000 was a resale of a property in a better part of the subdivision.

{¶ 18} Nor is there a dearth of evidence that market conditions generally were in decline. The appraiser Racek testified that "the housing construction and the housing market, as a whole, started the decline far before the commercial and industrial market started to decline in late 2008, early 2009," so that "by the time we got to 2008, the effective date of this analysis, the housing market was already in a—a large decline." Racek's pronouncement corroborated the more anecdotal testimony of Apple's fact witness before the BOR. *See AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 17-18 (evidence that terrorist attacks had depressed market for hotel rooms supported BTA's decision to perform an independent valuation of the property).

{¶ 19} Under these circumstances, we hold that the evidence before the BTA both negated the auditor's valuation of the unbuilt lots and furnished an evidentiary basis for the BTA to perform an independent valuation of the properties. We therefore reverse the BTA's decision to adopt the auditor's valuation and remand for an independent valuation by the BTA itself for tax year 2008.

## C. On remand, the BTA shall determine whether the 2008 value should be carried over or whether a new value must be determined for 2009

{¶ 20} On remand, the BTA will also confront the question whether to carry over its 2008 determination of value to 2009. R.C. 5715.19(D) provides as follows:

Liability for taxes and recoupment charges for such year and each succeeding year until the complaint is finally determined and for any penalty and interest for nonpayment thereof within the time required by law shall be based on the determination, valuation, or assessment as finally determined.

Our case law establishes that the carryover provision confers jurisdiction on the BTA to decide whether to carry over a value in a particular case. *Compare Wolf v. Cuyahoga Cty. Bd. of Revision*, 11 Ohio St.3d 205, 207-208, 465 N.E.2d 50 (1984), *with Oberlin Manor, Ltd. v. Lorain Cty. Bd. of Revision*, 69 Ohio St.3d 1, 2, 629 N.E.2d 1361 (1994).

{¶ 21} In *Wolf*, the tax year at issue was 1979, an update year in that county. The taxpayer argued that "the failure to render an opinion on valuation for the years 1980 and 1981 render[ed] the BTA decision unreasonable and unlawful." *Id*. We stated that under R.C. 5715.19(D), "the original complaint becomes a carry-over complaint until it is finally determined," with the result that the "tax years 1980 and 1981 were at issue before the BTA, along with tax year 1979." *Id*. But in response to the contention that the carryover provision required the BTA to address those years, we stated that the statute "merely provides, for purposes of this case, that tax liability for 1979 and each succeeding year until the BTA's determination must be based upon that determination," i.e., the determination of the board of revision as modified on appeal. *Id*. at 208. Accordingly, "[t]he BTA is under no obligation to render separate determinations of fair market value for succeeding years." *Id*.

{¶ 22} In *Oberlin Manor*, the tax year at issue was 1982, which was a triennial update year in Lorain County. The case had already come before the court once and had been remanded for a new determination of value. On remand,

8

the BTA had determined a value for tax year 1982 but made no mention of 1983 and 1984.

{¶ 23} When the taxpayer had trouble obtaining refunds from the county for 1983 and 1984, the next two years of the triennium, it filed a motion for reconsideration at the BTA within the proper time period, seeking an order carrying over the value found for 1982 to 1983 and 1984. The BTA declined on the grounds that the reconsideration standard was not satisfied. The taxpayer appealed, and the court reversed the BTA's failure to specify that the 1982 valuation was applicable to 1983 and 1984 as well.

{¶ 24} In *Oberlin Manor*, we relied on *Wolf*'s pronouncement that the remaining years of the triennium " 'were at issue before the BTA,' " observed that there was "no evidence of record that the property was changed in 1983 or 1984, or that it was in any way different from tax year 1982," and ordered that the BTA carry over the 1982 value to those later years. Our mandate was explicitly limited, however, to "the subsequent years in the same triennium." 69 Ohio St.3d at 2, 692 N.E.2d 1361, quoting *Wolf*, 11 Ohio St.3d at 207, 465 N.E.2d 50.

{¶ 25} Taken together, *Oberlin Manor* and *Wolf* establish that "once the board of revision's disposition of the complaint for the original tax year is pending at the BTA, the BTA *can* (and in some cases *must*) exercise jurisdiction over subsequent years during which the BTA case itself is still pending." (Emphasis sic.) *1495 Jaeger L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 222, 2012-Ohio-2680, 970 N.E.2d 949, ¶ 19. Moreover, the case law since *Wolf* and *Oberlin Manor* were has articulated the principles the BTA must follow in deciding valuation issues—including the duty to perform an independent valuation under particular circumstances, such as those here. *See Colonial Village*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196.

{¶ 26} Consistent with this case law we reiterate that when a complaint for a particular tax year is pending before the board of revision or the BTA and

remains unresolved during one or more succeeding years, the carryover provision confers jurisdiction on the BTA to address the succeeding year or years that are within the same triennium as the tax year for which the complaint was originally filed. We also modify *Wolf* by holding that the BTA's carryover jurisdiction encompasses the decision whether to carry over the value determined for the earlier year at issue *or whether to perform an independent valuation* based on evidence that militates against a carryover. On remand in this case, the BTA shall address tax year 2009 in accordance with these principles.

## D. The BTA exercised sound discretion in declining to determine value for tax year 2010

{¶ 27} Apple also asked the BTA to determine the value of the unbuilt lots for tax year 2010, but the BTA declined to do so. The BTA observed that 2008 and 2009 were "the latter portion of a sexennial reappraisal conducted in Medina County, while 2010 is the first year of the subsequent triennial update," noted that "the transcript certified by the BOR does not contain information for that tax year [2010], the one in which the auditor would have established new values," and concluded that "the better course is to direct [Apple Group] to first present its evidence of value to the BOR." BTA No. 2009-K-2101, 2012 WL 6846167, *3, fn. 3.

{¶ 28} Under its fifth proposition of law, Apple asserts that because the BTA had "continuing complaint" jurisdiction over tax year 2010, and because Apple had presented evidence of tax year 2010 valuation through the Racek appraisal, the BTA erred by its "failure * * * to comply with its statutory obligations to determine values for the sublots for the 2010 tax year."

{¶ 29} Although Apple is correct that continuing-complaint jurisdiction attached in this case and extended to tax year 2010, Apple is wrong to assert that the BTA thereby acquired *the obligation* to exercise jurisdiction over tax year 2010. The only authority Apple cites is *AERC Saw Mill Village, Inc. v. Franklin*

*Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 35; but contrary to Apple's suggestion, *AERC* directly determined that *the board of revision* had continuing-complaint jurisdiction for the ensuing tax year, *not the BTA*. *Id*. at ¶ 10-14. Indeed, our remand order in *AERC* consigned the question whether the continuing-complaint jurisdiction should be exercised before the BOR or before the BTA to the BTA's discretion. *Id*. at ¶ 38. Moreover, recognizing that the BTA may exercise discretion under the continuing-complaint provision is consistent with the case law applying the carryover provision, which has acknowledged the BTA's jurisdiction over the ensuing years within the same triennium, but which to date has not extended that jurisdiction beyond the triennium.

{¶ 30} Finally, under the continuing-complaint provision the BTA must be vigilant, when requested to determine value for later years, that it does not exceed its jurisdiction by addressing a tax year for which a fresh complaint has been filed below. *See Fogg-Akron*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, ¶ 10 ("we have held that the filing of a 'fresh complaint' * * * terminates the continuation of an earlier complaint, as long as the new complaint is procedurally valid").

{¶ 31} Accordingly, we reject Apple's fifth proposition of law and affirm the BTA's decision not to address tax year 2010.

## Conclusion

{¶ 32} For all the foregoing reasons, we reverse the BTA's decision to adopt the county's valuation for tax year 2008, and we reverse the decision to carry that valuation over to tax year 2009. We remand to the BTA with the instruction that the board perform an independent valuation for each of those two years. We additionally affirm the BTA's decision not to address tax year 2010.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

11

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 33} I agree with the portion of the majority opinion that holds that Apple Group failed to preserve the argument that sale prices ought to have been used to value three of the 13 unbuilt lots at issue. But I dissent from the judgment setting aside the BTA's determination of value and ordering a new valuation.

{¶ 34} In our review of valuations, we are to defer to the BTA in its role as the finder of fact:

> The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.

*Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Weighing of the evidence and the assessment of credibility regarding appraisals are "the statutory job of the BTA." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9, citing *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 601, 603, 665 N.E.2d 194 (1996). Consequently, the BTA "is not required to adopt the valuation fixed by any expert or witness" but instead possesses "wide discretion in determining the weight to be given to evidence and the credibility of the witnesses." *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.2d 13, 336 N.E.2d 433 (1975), paragraphs two and three of the syllabus.

{¶ 35} Given the BTA's role as fact-finder, we have held that "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *EOP-BP Tower*, ¶ 14. To prove an abuse of discretion by the BTA, a party must show that "the BTA's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, *see also Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 26. And finally, "our case law establishes that we will reverse BTA findings only when there is a total absence of evidence to support a particular finding." *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 14.

{¶ 36} Turning to the BTA's decision and the record in this case, I conclude that there is no basis in our precedent for setting aside the BTA's factual determinations either on total lack of evidence or for an abuse of discretion.

{¶ 37} The BTA explained why it decided not to accord great weight to the comparable-sales appraisal that it was given. First, although the appraisal showed a market decline over time for the properties under discussion, that decline was not documented until the third quarter of 2009 and did not prove the recommended lower valuation as of January 1, 2008. Second, the appraisal did not consider comparability of the sales in other subdivisions or the need for adjustments. Third, a pair of sales from the Trophy Club, one before and one after the 2008 lien date, indicated that the subdivision held its value in 2008.

{¶ 38} In my view, these circumstances do not show either a total lack of evidence or an abuse of discretion. I would thus defer to the BTA as the finder of fact and affirm its decision.

{¶ 39} Nonetheless, the majority determines that the BTA's valuation should be set aside and another valuation performed because the scant evidence presented negates the auditor's valuation. To do this, the majority relies on cases that have circumstances not present here. *Dayton–Montgomery Cty. Port Auth. v.*

*Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 22-30, as restated in *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 24, 26.

{¶ 40} In *Dayton*, evidence of actual cost corroborated the county's cost schedules but simultaneously negated the grade-factor adjustment that the county had applied. We could not affirm the BTA's decision to revert to the auditor's valuation, because it included the unsupported grade-factor adjustment. I joined the majority opinion there because the case presented unusual circumstances.

{¶ 41} Another unusual circumstance was presented in *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298: the property record card revealed an approach to valuing subsidized housing that was disapproved by case law. *Id.*, at ¶ 19-21. In light of that legal error, *id.* at ¶ 19, the BTA had the "duty to undertake an independent valuation of the property." *Id*. at ¶ 24. *See also Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 27, 36 (presumption favoring use of allocated sale price, together with plausible evidence of a proper allocation, justified finding a modified value of the property).

{¶ 42} Here, however, the only evidence that would negate the county's valuation is the very appraisal to which the BTA had decided to accord little weight. The BTA rejected it for the reasons explained. In reversing the BTA and ordering a new valuation, the majority has converted a modest exception to the rule of deference into a sweeping license for the court to substitute its own judgment regarding the evidence. This approach does nothing other than second-guess the BTA's determination as a finder of fact and make us a super BTA, contrary to precedent. *See Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 22, quoting *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, 822

N.E.2d 790, ¶ 16 ("We will defer to the BTA's choice of appraisal" because "[i]n reviewing the BTA's disposition of the factual issues in a property valuation case, '[t]his court does not sit either as a super BTA or as a trier of fact de novo' ").

{¶ 43} The majority's refusal to defer to the BTA's fact-finding also leads it to modify the longstanding holding of *Wolf v. Cuyahoga Cty. Bd. of Revision*, 11 Ohio St.3d 205, 208, 465 N.E.2d 50 (1984), that "[t]he BTA is under no obligation to render separate determinations of fair market value for succeeding years." Because the BTA now has been ordered to perform an independent determination of value for tax year 2008, and because the BTA's decision carried the 2008 value over to 2009, the majority has ordered an independent valuation for 2009 as well. In this respect, the correct approach would also have been the simpler one: exercise proper deference to the BTA's determination for 2008 and then defer to the BTA's discretion to carry that value forward to tax year 2009.

{¶ 44} For these reasons, I respectfully dissent from the majority's decision to reverse and remand.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, Charles J. Bauernschmidt, and Stephen M. Nowak, for appellant.

Dean Holman, Medina County Prosecuting Attorney, and Nathan E. Carnes, Assistant Prosecuting Attorney, for appellees, Medina County Auditor and Medina County Board of Revision.

_____