[Cite as *Painter v. Testa*, 2017-Ohio-267.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MATTHEW L. PAINTER | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JOSEPH W. TESTA, TAX COMMISSIONER | : | Case No. 16 CAH 03 0016 |
| OF OHIO | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Ohio Board of Tax Appeals Case No. 2015-111

JUDGMENT: Affirmed

DATE OF JUDGMENT: January 20, 2017

APPEARANCES:

For Plaintiff-Appellant

JOHN L. TANOURY
Ball & Tanoury
1010 Old Henderson Rd., Suite 1
Columbus, Ohio 43220

For Defendant-Appellee

MICHAEL DEWINE
Attorney General of Ohio

By: RAINA M. NAHRA
DANIEL G. KIM
Assistant Attorneys General
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3428

*Baldwin, J.*

{¶1}   Plaintiff-appellant Matthew L. Painter appeals from the February 26, 2016 Decision and Order of the Ohio Board of Tax Appeals holding that plaintiff-appellant was a responsible party for the unpaid sales tax of Central City Beverage, Inc. for the period from January 1, 2009 through December 31, 2011.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant Matthew L. Painter was at all relevant times the sole owner and officer of Central City Beverage, Inc. ("Central City"). In May of 2007, a Management Agreement was entered into between Central City, as seller, and 451 Lazelle Rd, Inc., as buyer. Pursuant to the terms of the agreement, 451 Lazelle agreed to purchase the business assets of Central City's carryout business and the parties agreed that the assets would be continued under the management of 451 Lazelle Rd. during the period, which was to expire upon the successful transfer of the liquor permit for the business to 451 Lazelle Rd. or the termination of the Asset Purchase Agreement entered into by the parties. In accordance with the agreement, 451 Lazelle was to assume all responsibility for the business and to pay any and all taxes due. The agreement required 451 Lazelle, upon appellant's request, to present to appellant proof that the taxes had been paid.

{¶3}   During the period from May of 2007 through August of 2010, 451 Lazelle Rd., at various times, did not timely file tax returns or pay all taxes due. In August of 2010, appellant terminated the agreement due to non-payment of note obligations and resumed active operation of Central City. However, in November of 2010, Central City, as seller, and Gazelle ABA LLC, as buyer, entered into the same Management Agreement.  Gazelle LLC operated the business from December 1, 2010 through mid-2011, when appellant

terminated the agreement and resumed active operation of Central City. Finally, in September of 2011, a third Management Agreement was entered into with Tiberi Enterprises.

**{¶4}** At all relevant times, the vendor's and liquor licenses remained in the name of Central City. All tax returns were filed and payments made by the buyers on behalf of Central City using Central City's vendor's license/liquor permit numbers.

**{¶5}** After an audit for the period from January 1, 2009 through December 31, 2011 revealed that Central City had unreported and underpaid sales tax for such period, the Tax Commissioner, on or about January 22, 2013, issued an assessment against Central City for that liability. The total assessment due was $96,510.51. In 2014, the Tax Commissioner derivatively assessed appellant as a responsible party for the same debt under R.C. 5739.33.

**{¶6}** On or about May 12, 2014, appellant filed a Petition for Reassessment with the Tax Commissioner, contending that he was not a responsible party because he had three different Management Agreements during the audit period under the terms of which the other parties agreed to file and pay all taxes for the business until the liquor permit was transferred. The Tax Commissioner, in a final determination letter to appellant dated January 15, 2015, denied appellant's objection and affirmed the assessment. The Ohio Board of Tax Appeals (BTA), in a Decision and order dated February 26, 2016, affirmed the Tax Commissioner's decision.

**{¶7}** Appellant now appeals from the February 26, 2016 Decision and Order.

**{¶8}** While appellant has not set forth a specific assignment of error, appellant argues that the BTA erred in concluding that he was a responsible party for purposes of R.C. 5739.33.

**{¶9}** An appeal from a decision of the BTA involving a tax assessment made by the Tax Commissioner is provided by R.C. 5717.04. In *Global Knowledge Training, L.L.C. v. Levin,* 127 Ohio St.3d 34, 2010–Ohio–4411, 936 N.E.2d 463, ¶ 12, the Supreme Court of Ohio explained the proper standard of reviewing an administrative appeal from the BTA:

> …[O]ur standard of review from a decision of the BTA is whether it is "reasonable and lawful." While we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion," we will affirm the BTA's resolution of factual issues if the record contains reliable and probative evidence that supports the BTA's findings. [T]the tax commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." Consequently, the taxpayer carries the burden "to show the manner and extent of the error in the Tax Commissioner's final determination." Specifically, "when an assessment is contested, the taxpayer has the burden "'to show in what manner and to what extent' "the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect."

**{¶10}** (Internal citations omitted.) *Id.* at ¶ 12.

**{¶11}** R.C. 5739.33 states as follows:

If any corporation, limited liability company, or business trust required to file returns and to remit tax due to the state under this chapter, including a holder of a direct payment permit under section 5739.031 of the Revised Code, fails for any reason to make the filing or payment, any of its employees having control or supervision of or charged with the responsibility of filing returns and making payments, or any of its officers, members, managers, or trustees who are responsible for the execution of the corporation's, limited liability company's, or business trust's fiscal responsibilities, shall be personally liable for the failure. The dissolution, termination, or bankruptcy of a corporation, limited liability company, or business trust shall not discharge a responsible officer's, member's, manager's, employee's, or trustee's liability for a failure of the corporation, limited liability company, or business trust to file returns or remit tax due. The sum due for the liability may be collected by assessment in the manner provided in section 5739.13 of the Revised Code.

**{¶12}** The Ohio Supreme Court has clarified this provision, explaining that liability "is limited to those officers who have control or supervision of or are charged with the responsibility of filing returns and making payments." *Weiss v. Porterfield,* 27 Ohio St.2d 117, 121, 271 N.E.2d 792 (1971). *See also Kihm v. Lindley,* 70 Ohio St.2d 76, 78, 434 N.E.2d 1354 (1982) (for an officer of a corporation to be personally liable for unfiled tax returns, there must be evidence that the person had the duty of filing the returns for the company). As noted by the Ohio Supreme Court, a responsible officer or employee cannot "escape liability by delegating those duties to others." *Spithogianis v. Limbach*, 53

Ohio St.3d 55, 57, 559 N.E.2d 449 (1990). As a consequence, any side agreement that a taxpayer might enter into with another entity concerning responsibility for payment of sales tax, like the Management Agreements to which appellant refers, is not binding on the Tax Commission. *Farhan, dba Hiland Foods v. Tracy*, 10th Dist. No. 97APH10-1410, 1998 WL 418987 (July 21, 1998).

**{¶13}** Appellant contends that he is not a responsible party because he had three different Management Agreements during the audit period under the terms of which the other parties agreed to file and pay all taxes for the business until the liquor permit was transferred. However, as noted by the BTA in its Decision and Order, this issue previously has been considered. In *SQS Foodstores, Inc. v. Tracy*, 7th Dist. Mahoning No. 00-CA-124, 2002-Ohio- 5015 (Sept. 18, 2001), for example, the court held that a taxpayer that held vendor's licenses and liquor permits for four convenience stores was responsible for a sales tax shortfall, even though the taxpayer had leased the stores to individuals who ran them and the terms of the lease provided that the lessee was responsible for payment of taxes. The court held that payment of taxes was a duty that could not be delegated. See also *Farhan*, supra.

**{¶14}** In the case sub judice, the liquor permit was never transferred to another entity at any time during the audit period and appellant maintained a vendor's license during the same period.  Appellant was the President and sole owner/shareholder of Central City and had the requisite power to exercise control over Central City's fiscal obligations. He signed the various Management Agreements on behalf of Central City and, as noted by the BTA, monitored "the tax compliance of the management entities

making filings on its behalf." Appellant, under the terms of the Management Agreements, was authorized to require proof that the taxes had been paid.

{¶15}  Based on the foregoing, we find that the BTA did not err in concluding that appellant was a responsible party for purposes of R.C. 5739.33.

{¶16}  Appellant's assignment is overruled.

{¶17}  Accordingly, the Decision and Order of the BTA is affirmed.

By: Baldwin, J.

Farmer, J. and

Gwin, J. concur.