[Cite as *Huber v. Ohio Dept. of Job & Family Servs.*, 2025-Ohio-2895.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JOHN HUBER | : | |
| | : | C.A. No. 30379 |
| Appellant | : | |
| | : | Trial Court Case No. 2023 CV 04693 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| OHIO DEPARTMENT OF JOB AND | : | Court) |
| FAMILY SERVICES | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellee | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 15, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

EPLEY, P.J. and TUCKER, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30379


JOHN HUBER, Appellant, Pro Se
JULIE E. BRIGNER, Attorney for Appellee


HANSEMAN, J.

{¶ 1} Appellant John Huber appeals pro se from a trial court judgment affirming an administrative appeal decision of Appellee, Ohio Department of Job and Family Services ("ODJFS"). In its decision, ODJFS found that Huber had abandoned his state hearing and had failed to demonstrate good cause for the failure to appear for the hearing as scheduled.

{¶ 2} Huber's brief did not comply with App.R. 16(A)(3), which requires appellants to provide "a statement of assignments of error presented for review, with reference to the place in the record where each error is reflected." However, from what we can glean, Huber contends that ODJFS violated the doctrine of the "fruit of the poisonous tree" in some manner. As part of this argument, Huber mentions in his statement of the issues that the transcript filed by ODJFS contained only 90 pages, whereas he had provided the agency with hundreds of pages of records. The rest of Huber's brief is simply a discussion of why ODJFS wrongfully denied Medicaid coverage – which was not the proper subject of his appeal to the trial court.

{¶ 3} After reviewing the record, we find no error or abuse of discretion on the trial court's part. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} On September 5, 2023, Huber filed an appeal in the trial court from an ODJFS final administrative decision concerning the discontinuance of Medicaid benefits for Huber and his family members. After appearing in the action, ODJFS filed the certified

administrative record on September 22, 2023. The trial court then set a schedule for filing briefs on the matter. However, Huber asked for an extension of time, alleging that the transcript ODJFS had filed was incomplete. On December 18, 2023, the court granted the extension and ordered Huber to file his brief by January 5, 2024. In its decision, the court noted that Huber had failed to provide any evidence that the transcript was incomplete; the court therefore said it would not allow further extensions.

{¶ 5} The following day, Huber requested "reconsideration" of additional information and attached several exhibits to the request. He then filed his brief on January 5, 2024; ODJFS filed its response on February 29, 2024. This was followed by Huber's reply brief, which was filed on March 19, 2024. Subsequently, the trial court affirmed the ODJFS decision and struck the additional evidence that Huber had filed. Final and Appealable Decision, Order and Entry Affirming the Administrative Appeal Decision of Appellee, Ohio Department of Job and Family Services (Jan. 2, 2025) ("Decision"). Huber timely appealed from the court's decision. Additional facts will be mentioned when we discuss the issues on appeal.

## II. Discussion

{¶ 6} As noted, Huber does not assert appropriate assignments of error in his pro se brief. While Huber's brief is difficult to decipher, he appears to allege that in discontinuing Medicaid coverage, ODJFS fraudulently relied on a spreadsheet from a separate matter involving denial of supplemental nutrition assistance program ("SNAP") benefits and that ODJFS did not "provide" an updated June 2023 spreadsheet and accounting codes in the transcript of proceedings filed with the trial court. Appellant's Brief at p. 3-4. Huber relies on a "fruit of the poisonous tree" argument and also claims the trial court should have admitted the additional evidence he filed. Before considering these points, we will outline general legal

standards that apply.

## 1. General Legal Standards

{¶ 7} Huber's trial court case was brought under R.C. 5101.35(E), which allows parties to appeal ODJFS administrative decisions "pursuant to section 119.12 of the Revised Code," with limited exceptions that are not at issue here. "The statutory charge to the common pleas court reviewing such administrative appeals is not open-ended, but instead rather precisely defined: The common pleas court usually is 'confined to the record as certified to it by the agency' and to 'newly discovered' evidence that could not reasonably have been adduced before the agency." *Soltesz v. Ohio Dept. of Job & Family Servs.*, 2020-Ohio-365, ¶ 8 (10th Dist.), quoting R.C. 119.12(K) [now (L), per 2023 amendments]. A common pleas court " 'may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.' " *Id.*, quoting R.C. 119.12(M) [now N].

{¶ 8} In applying this type of review, the common pleas court "must give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). The Supreme Court of Ohio has also defined the supporting evidence that R.C. 119.12 requires as follows: "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value."

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

**{¶ 9}** Our own review is more limited than that of common pleas courts. We cannot review the evidence. Instead, we may only decide if the trial court abused its discretion. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). However, we do review issues of law de novo. *Rudd v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-3796, ¶ 9 (2d Dist.), citing *Gruber v. Ohio Dept. of Job & Family Servs.*, 2003-Ohio-2528, ¶ 12 (6th Dist.).

**{¶ 10}** " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*. "A decision is unreasonable if there is no sound reasoning process that would support" it. *Id*. In de novo review, however, courts exercise their own independent judgment. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

**{¶ 11}** With these standards in mind, we will discuss the issues before us.

## 2. Fruit of the Poisonous Tree

**{¶ 12}** Huber claims ODJFS fraudulently "provided" information for the Medicaid case by using information from his SNAP case, and the information therefore should be prohibited under the doctrine of the "fruit of the poisonous tree." In response, ODJFS contends: (1) Huber waived use of this doctrine by failing to raise it in the trial court; and (2) the doctrine only applies to criminal cases.

**{¶ 13}** "The derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is

widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure. . . . The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality." *State v. McLemore*, 2012-Ohio-521, ¶ 20 (2d Dist.), citing *Nardone v. United States*, 308 U.S. 338 (1939), and *Wong Sun v. United States*, 371 U.S. 471 (1963). This doctrine is irrelevant here, as it applies to criminal cases, not to civil matters like administrative appeals.

{¶ 14} Huber also did not mention this doctrine in the trial court. Huber did allege that ODJFS "broke the law" by not applying Huber's self-employment income with deductions; he also accused the agency of acting in bad faith. Reply (Mar. 19, 2024), p. 3 and 4. However, the trial court said it would not consider matters related to the denial of Huber's Medicaid benefits because the merits of that issue were not before it. Decision at p. 7. We agree. The only relevant matter concerned whether Huber had abandoned his administrative appeal. Regarding this point, the court found that Huber had abandoned the appeal, and our task is to decide if the court abused its discretion in reaching this conclusion.

3. Abandonment

{¶ 15} R.C. 5101.35(B) requires ODJFS to grant state hearings for appeals of decisions or orders of agencies administering family services programs. These family services include the Medicaid program. *See* Adm.Code 5101:6-1-01(A). The state hearings must also be conducted in accordance with rules that ODJFS adopts pursuant to R.C. 5101.35(B). Consistent with this directive, ODJFS promulgated Adm.Code 5101:6-1-01 through 5101:6-52-11. As relevant here, Adm.Code 5101:6-3-01(B)(2) allows a state

hearing where "[t]he agency has proposed or acted to reduce, suspend, terminate, expunge, or withhold benefits, or the assistance group believes that the level of benefits is not correct."[1]

{¶ 16} In June 2023, Huber filed a state hearing request concerning ODJFS's decision to terminate Medicaid benefits for himself, his minor child, J.H., and an adult son, Ja.H. ODJFS Hearing Record Certification (Initial), p. 76.[2] The reasons for the termination were that Ja.H was out of the home and the income of J.H. and Huber exceeded the permissible limits for coverage. *Id*. at p. 34.

{¶ 17} Hearings are conducted by the ODJFS bureau of state hearings ("BSH"). *See* Adm.Code 5101:6-5-01. Under Adm.Code 5101:6-6-01(B): "The bureau of state hearings shall send written notice of the time, date, and place of the hearing to the individual . . . via use of a notice describing the date, place, and time of the state hearing. . . . (2) This notice shall be mailed at least ten calendar days prior to the date of the hearing, unless the appellant or authorized representative requests less advance notice to expedite scheduling." Furthermore, "The scheduling notice shall: (a) Provide the name, address, and telephone number of the person to notify if the individual cannot attend the hearing [and] (b) Explain

---

[1] Under Adm.Code 5101:4-1-03(B)(4), an "assistance group" refers to "those persons potentially eligible or determined eligible to receive benefits together under one assistance group name. This was formerly referred to as the SNAP household." *See also* Adm.Code 5160:1-1-01, defining "Medicaid household" as "a group of individuals, defined in relationship to one specific medical assistance applicant or recipient, who impact the applicant's or recipient's family size, household income, or both."

[2] The state hearing record that ODJFS filed has two parts. One part contains 76 pages relating to Huber's initial appeal from the Medicaid denial and his request for a state hearing (numbered from 1 to 76); the other part contains 11 pages relating to Huber's appeal from the dismissal of his state hearing request (numbered from 1 to 11). To avoid confusion, we will refer to these records, respectively, as "Initial," followed by the page number that applies to the initial appeal, and "Adm. Appeal," followed by the page number for Huber's appeal from the dismissal of his state hearing request.

that the hearing request will be dismissed if the appellant or authorized representative fails, without good cause, to appear for the hearing. . . ." Adm.Code 5101:6-6-01(B)(4)(a) and (b).

{¶ 18} On July 3, 2023, BSH mailed Huber a Notice to Appear, which instructed him to appear for a scheduled hearing on July 17, 2023, at 10:30 a.m. The notice included instructions on how to connect with the hearing (online, by telephone, or by mobile phone) and provided separate phone numbers that should be called immediately for certain purposes, such as if the appellant could not attend on that time and date and would like to reschedule. Initial at p. 72-75.

{¶ 19} In addition, the notice contained warnings. It first said: "**If you do not call the above number for your hearing or join online or through the SHARE portal, your hearing may be dismissed**." (Emphasis in original.) *Id.* at p. 74. The notice further stressed that:

> If you do not come to this hearing, you will receive a dismissal notice and any continuing fair hearing benefits you receive will end. This also means the local agency can go ahead with the action it was planning to take. The dismissal notice will give you additional information about your rights and actions you can take.

Initial at p. 75.

{¶ 20} According to the record of an online hearing chat, two participants joined the hearing on July 17, 2023: Corey Lawson, at 10:29 a.m.; and Damico Twila, at 10:32 a.m. Huber was not present. The hearing officer began recording at 10:32 a.m., and the hearing concluded at 10:35 a.m. *Id*. at p. 12. On July 18, 2023, ODJFS mailed Huber a "Notice of Abandoned Hearing." *Id*. at p. 8-11. The notice informed Huber that his state hearing request would be dismissed because neither he nor a representative appeared at the hearing

scheduled for July 17. *Id*. at p. 10. The notice gave Huber the option to reschedule, provided various avenues for doing so (like phone, email, fax, or mail), and stated: "Your request for rescheduling, along with your good cause verification, must be received by 7/28/2023." *Id*.

{¶ 21} As pertinent here, Adm.Code 5101:6-5-03(E) provides that:

A request for a state hearing may be dismissed only for the following reasons: . . . (2) The request is abandoned. A state hearing request is "abandoned" when the individual or authorized representative fails, without good cause, to attend the state hearing. A "state hearing" is defined as the initial state hearing, a hearing that has been rescheduled, or a hearing that has been continued.

(a) When the hearing has been abandoned, the individual and authorized representative shall be notified that the hearing request will be dismissed if good cause for failing to attend is not shown within ten days of the mailing date of the notice.

(b) The hearing shall be rescheduled if the individual or authorized representative contacts the hearing authority, in writing or by telephone, within the ten-day period and establishes good cause.

(c) The request shall be dismissed as abandoned if the bureau of state hearings does not receive a showing of good cause within the ten-day period. The date of dismissal is the day after the ten-day period ends.

(d) If the individual contacts the hearing authority but fails to establish good cause, the individual shall be given written notice of that determination and of the right to and the method of obtaining an administrative appeal. Copies shall be sent to the local agency.

(e) "Good cause" is defined as death in the immediate family, sudden illness or injury of the individual or a member of the individual's immediate family, or other circumstances that reasonably prevented attendance at the hearing.

(f) The hearing authority shall have final authority to determine if good cause was timely shown. Verification of good cause may be required.

{¶ 22} BSH's notice complied with the above requirements. In addition, the notice informed Huber that the dismissal was the official decision of his state hearing and that if he disagreed with the decision, he could request an administrative appeal. Initial at p. 10. The notice also informed Huber that BSH must receive a written request for an administrative appeal within 15 days from the mailing date of the notice. *Id*. If Huber did not request an administrative appeal, the notice would be a final and binding decision, and any fair hearing benefits would end. *Id*. Huber failed to submit a rescheduling request within the ten-day period, and the abandonment dismissal became final on July 29, pursuant to Adm.Code 5101:6-5-03(E)(2)(c).

{¶ 23} After the deadline for filing a request to reschedule had expired, Huber sent a rescheduling request to BSH. In the request, Huber stated that he had just received the "Notice of Abandoned Hearing" in his post office box on July 30, 2023. Initial at p. 5. However, Huber stated in his trial court brief that he did not check his post office box between July 24 and July 30. *See* Brief (Jan. 5, 2024) ("Trial Brief"), p. 9.

{¶ 24} In the administrative proceeding, Huber admitted that he had not called in for his state hearing at 10:30 a.m. He said he had, however, called in five to seven minutes later or "maybe sooner." Initial at p. 5. In contrast, Huber said in the trial court that he called the hearing number at 10:44:57 a.m., meaning his call was nearly 15 minutes late. *See* Thank

You and Reconsideration of Missing Information (Dec. 19, 2023) ("Reconsideration Request"), p. 4 and Trial Brief at p. 9.

{¶ 25} During the administrative proceeding, Huber also stated that when he called the phone number for the state hearing, he "DID 'open' " the meeting, but no one answered. Huber then remained on the line, and his call was disconnected at 11:15 a.m. Initial at p. 5. As an explanation for not calling at the required time, Huber said his wife had phoned him at 10:28 a.m. to tell him that he needed to call his brother. According to Huber, his brother was the executor of their father's estate, was at probate court, and was having a problem with their father's death certificate. *Id.*

{¶ 26} On August 1, 2023, BSH sent Huber a denial notice concerning his July 31, 2023 request to reschedule. *Id.* at p. 1-3. The notice stated that the request was being denied pending verification. *Id.* at p. 3. The notice defined "good cause" and told Huber that BSH would decide if good cause existed once he submitted verification. Finally, the notice informed Huber that he was required to submit the proof within ten days after the notice was mailed, and if he failed to do so within that time, "the reschedule request will remain denied." *Id.* Huber failed to submit any verification; instead, on August 1, 2023, he simply resent his original email to BSH. Adm. Appeal, p. 7. The rescheduling request, therefore, remained denied.

{¶ 27} Adm.Code 5101:6-8-01(A) provides that: "An individual who disagrees with a state hearing decision, or with a decision by the hearing authority to deny or dismiss a hearing request, has the right to request an administrative appeal." As relevant here, under subdivision (C)(1) of this regulation, "A state hearing decision, or a decision by the hearing authority to deny or dismiss a hearing request, will be reviewed for one or more of the following reasons: (a) The decision is contrary to the weight of the evidence presented. (b)

A prejudicial error was committed in the course of the proceedings. [or] (c) The decision relies on an incorrect application of law or rule. . . ." Additionally, subdivision (I)(3) of the regulation states that: "The administrative appeal decision shall affirm the initial decision when the hearing examiner determines that the initial decision contains no error affecting the outcome of the appeal."

{¶ 28} Huber did further appeal, but on August 4, 2023, BSH mailed an administrative appeal decision to him affirming the state hearing decision. Adm. Appeal at p. 5-9. In the decision, BSH found that Huber had been properly notified of the need to provide verification and had not established good cause. *Id*. at p. 8. BSH also found that Huber had failed to provide documents to establish good cause within the 10-day verification deadline and had not established good cause for failing to appear at the hearing. *Id*.

{¶ 29} In considering this matter, the trial court conducted a thorough review of the record and applicable law and found that "the Administrative Appeal Decision is supported by reliable, probative, and substantial evidence and is in accordance with law." Decision at p. 9.

{¶ 30} Having reviewed the entire court record, including the administrative transcript, we find no abuse of discretion. The court's decision was supported by sound reasoning. In particular, Huber's excuse for failing to attend the hearing does not even arguably fit within the definition of "good cause," which refers to serious events like death in one's immediate family and sudden illness. Adm.Code 5101:6-5-03(E)(2)(e). The trial court correctly found the ODJFS decision was supported by the proper amount of evidence.

### III. Supplementation of the Record

{¶ 31} While Huber's brief primarily discusses the merits of the Medicaid denial, he also claims the administrative record was incomplete. In that context, we note that Huber

attached numerous documents to a memorandum he filed in the trial court and asked the court to consider these items. Reconsideration Request at p. 1. The court rejected Huber's attempt to supplement the record, finding the documents fell into several categories that were either improper for supplementation or were irrelevant. Specifically, the court noted these documents: (1) related to the merits of the initial Medicaid denial, which was not before the court; (2) were not considered by ODJFS in denying the request to reschedule; (3) were already in the administrative record; or (4) were created after the ODJFS final decision. Decision at p. 7 and fn. 3.

{¶ 32} In this regard, R.C. 119.12(L) provides that "[u]nless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." "The decision to admit additional evidence lies within the discretion of the court of common pleas, but only after the court has determined that the evidence is newly discovered and that it could not with reasonable diligence have been ascertained prior to the agency hearing." *Cincinnati City School Dist. v. State Bd. of Edn.*, 113 Ohio App.3d 305, 317 (10th Dist. 1996), citing *Ganley, Inc. v. Ohio Motor Vehicle Dealers Bd.*, 1994 WL 530307, *3 (10th Dist. Sept. 29, 1994).

{¶ 33} " 'Newly discovered' evidence under R.C. 119.12 pertains to evidence that existed at the time of the administrative hearing; the term does not refer to newly created evidence, such as evidence created after the hearing.' " *Beach v. Ohio Bd. of Nursing*, 2011-Ohio-3451, ¶ 16 (10th Dist.), citing *Golden Christian Academy v. Zelman*, 144 Ohio App.3d 513, 517 (10th Dist. 2001).

{¶ 34} Having examined all these records, we find no abuse of discretion in the court's decision not to admit or consider them. The court's remarks about the documents were

accurate, and the documents would not have been properly admitted under R.C. 119.12(L).

Accordingly, and based on the preceding discussion, all of Huber's assignments of error are overruled.

## IV. Conclusion

{¶ 35} All of Huber's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.